STATE OF FLORIDA, ex rel. CARY D. LANDIS, Attorney General, *Relator*, v. THOMAS A. DYER, GUS A. BERMER, FRAZIER T. BLOUNT, ADDISON LOGAN and HARRY N. SANDLER, *Respondents*.

34

148 So. 201.
Opinion filed March 13, 1933.
Re-hearing denied May 29, 1933.

*Cary D. Landis, Attorney General* and *Wm. C. Pierce,* for Relator;

*Frank T. Phillips* and *Alonzo B. McMullen,* for Respondents.

TERRELL, J.—This proceeding *in quo warranto* challenges the constitutional validity of Chapter 15533, Laws of Florida, Special Acts of 1931, creating a Board of Elections in the City of Tampa, and regulating all municipal elections in that city including primary elections. This is the second time we have been called on to adjudicate the validity of this act. State *ex rel,* McMullen, v. Johnson, 102 Fla. 19, 135 So. 816. None of the questions considered in the latter case are raised in the instant case.

It is first contended that Chapter 15533 provides for the holding of all primary elections for a single political party in the City of Tampa, that many electors in the city are precluded from voting as members of said party and that the expenses of said primary elections are paid from the common treasury of the city in violation of law, in that they are not made for a municipal purpose.

If relator's promise was admitted his conclusion would be inevitable but we do not so interpret the statute. The Board of Elections for the City of Tampa is required to conduct, hold and regulate all municipal elections in said city including primary elections, general elections, bond elections and other elections. Section 17 of the act requires that a primary election be held in the city "on the first Tuesday in September of every year in which a gen-

eral election is held for the nomination of all candidates for all elective municipal offices in the city, by all political parties in the city." Section 19 requires that "the nomination of all candidates for all elective municipal offices in the city by the white municipal party of the city and all other political parties within the city, as defined by this act, and the election of the members of the executive committees of all such political parties shall be made in the manner provided in this Act and not otherwise." Section 18 provides that "a political party which, at the general election for municipal officers at which a mayor was elected then next preceding a primary, polled for its candidate for mayor at said general election more than twenty-five per cent. of the entire vote cast for the office of mayor at said general election, is hereby declared to be a political party within the city, within the meaning of this act and shall nominate its candidates for all elective municipal offices under the provisions of this act."

A casual inspection of these pertinent provisions of Chapter 15533 disclosed that it is potentially applicable to all political parties within the city, that it was designated to lodge all of the city's election machinery in ithe Board of Elections and that it is in no sense restricted to a single party. The fact that the white municipal party was the only party known in the city at the time the act was passed does not restrict its application alone to that party when it is potentially applicable to all others. Even if there had been merit to this objecion when raised the record discloses that municipal elections have been held under the act so that objection may be removed. At any rate, the fact that there was but one political party in the city at the time the act was passed constituted no impediment to its passage as a matter of law or policy.

Was the payment of the expense of the primary as authorized by Chapter 15533 an expenditure for a municipal purpose as contemplated by law? The line of distinction between a municipal and a non-municipal purpose is often vague and difficult to divine, neither is it subject to fixation by any prescribed formula. Where no principle of organic law is violated the legislative determination of a municipal purpose will not be disturbed by the judiciary if the purpose named in the statute is municipal in its nature. Peterson v. Town of Davenport, 90 Fla. 71, 105 So. 265.

Here we have a legislative determination that the expense of a municipal primary is within the range of a municipal purpose. A very able brief on the part of relator reveals no ground on which this determination should be overthrown. Primary elections were in no sense the offspring of political parties. The fact is that in their inception they met their strongest opposition in the organizations of the major political parties. They grew out of the alleged corrupt practices of the convention and a widespread demand on the part of the people for a direct vote in designating the nominee of the party for office rather than have them named by the party conventions, committees or by some other indirect method. They were never the private assets of political parties but were mandatory regulations imposed upon them by public demand and having been imposed by a public statute they become governmental rather than political instrumentalities. It would be difficult to conceive of any institution in our political fabric more thoroughly impregnated with a public interest than a primary election. They have become so interwoven with the general election that the laws governing both comprise the election machinery of the State. State *ex rel.*

Merrill v. Gerow, 79 Fla. 804, 144, 9 R. C. L. 1074. This rule, of course, is predicated on the policy adopted in most jurisdictions of taking over the primary as a governmental agency for political nomination. It may not apply when the primary is a party agency for a like purpose but in either event it is as applicable to municipal·as to State and county primaries.

In the case at bar it is not out of place to state the entire expense of the primary elections provided for under Chapter 15533 is not paid for by the municipality. · Each candidate who enters the primary is assessed and required to pay seven and one-half per cent. of the amount of one year's salary paid by the office for which he contests, which amount is placed in the general fund of the city from which the expenses' of the primary are paid. State *ex rel.* Labauve v. Michel, 121 La. 374, 46 So. 430.

We have read Waples v. Marrast, 108 Tex. 5, 184 S. W. 180, L., R. A. 1917A, 253, and it was based on a state of facts different from the instant case.

It is next contended that Chapter 15533 is invalid because it provides for holding primary elections for a single political party at public expense in which negroes are excluded and only white electors are allowed to participate.

In this contention relator attempts to bring himself within the rule announced by the Supreme Court in Nixon v. Herndon, 273 U. S. 536, 47 Sup. Ct. Rep. 446, 71 L. Ed. 281 and Nixon v. Condon, 286 U. S. 73, 52 Sup. Ct. Rep. 484, 76 L. Ed. 984, wherein the Texas primary law was held invalid because violative of the 14th amendment to the Federal Constitution.

It appears that the Texas statute under review in Nixon v. Herndon contained a positive prohibition against negroes voting in a primary election held under the laws of that·

state. The Supreme Court held that such provision was in conflict with the 14th amendment to the federal constitution in that it made the right of suffrage depend on a classification based on color. After this decision the Texas law was amended by striking the prohibition against negroes voting in primary elections and inserting in lieu thereof a provision authorizing the state executive committee of each political party to prescribe qualifications of its own members and determine who should be eligible to vote and participate in the affairs of the party. Pursuant to this provision the state executive committee of the Democratic party adopted a resolution providing in effect that all white Democrats and no others who were qualified under the constitution and laws of Texas should be permitted to vote under the primary law of that state. This action on the part of the state executive committee precipitated the case of Nixon v. Condon with same result as Nixon v. Herndon, *supra*.

In both Nixon v. Herndon and Nixon v. Condon, Nixon, a negro, was asserting his right to vote in a primary election. No such situation is presented in this case. The relator is not personally affected, neither is it shown or suggested that any one personally affected by the act is complaining. This Court will not ordinarily listen to objections to the constitutional validity of an act by one whose personal or property interests are not affected or who has no personal interest in defeating it. State *ex rel.* McMullen, v. Johnson, *supra*.

We are also reminded that Chapter 15533 does not in terms or by implication exclude negroes from voting nor does it exclude the white municipal party or any other political party from prescribing qualifications for its members that would exclude negroes or others from voting,

neither does it approve any rule or regulation on the part of the Board of Elections or any political party that would have such an effect. It is not charged that a negro has been deprived of his right to vote or has so much as had that right challenged under this act. In view of such material variances in this from the Texas law Nixon v. Herndon, has no application to this case.

It is next contended that Chapter 15533 is violative of the State and federal constitutions in that it unreasonably restrict the right to vote and to create new political parties, restricts the general election ballot to nominees of a single political party and pays the expenses thereof from the public treasury.

This assault is fully awarded in the fore part of this opinion. It would, therefore, be superfluous to discuss it further in this connection. The right to vote, though not inherent, is a constitutional right in this State. The Legislature may impose reasonable rules and regulations for its governance but it cannot under the guise of such regulation unduly subvest or restrain this right. McCrory on Elections 57. There is no showing of unreasonable restraint on the franchise by Chapter 15533. State *ex rel.* McMullen v. Johnson, *supra.*

Section 26 of the Act provides ample means for all electors and groups of electors who do not rise to the status of a political party as defined therein, to have a candidate representing their views placed on the ballot by petition to be voted for in the general election. True there are restrictions placed on nominations by petition but they are not materially different from those placed on nominations by primary which we have heretofore held valid. State *ex rel.* Barnett v. Gray, decided October 18, 1932. Except

for the provisions of Section 26 there would be no merit to this contention.

It is next contended that Chapter 15533 is unconstitutional in that it creates a self perpetuating election board, contrary to the spirit of our constitutional form of government, particularly Section 7, Article 16, Constitution of Florida.

Section 1 *et seq.* of Chapter 15533 creates an election board composed of five members who are named in the act for terms of four years and are deemed officers of the city. As the term of any member expires or any vacancy occurs from other cause the remaining members of the board elect a member for the new term or to fill the unexpired term. If this provision had reference to State and county officers it would undoubtedly impinge on Section 7 of Article 16 of the constitution which inhibits the Legislature from creating any office for a longer term than four years, but Section 7 of Article 16 has no application to municipal offices. State *ex rel.* Lamar v. Dillon, et al., 42 Fla. 95, 28 So. 781.

Since the Legislature is given a free hand in dealing with municipalities under Section 8 of Article 8 of the constitution, so long as its enactments do not infringe on some other provision of organic law they should be upheld. In other words legislative acts affecting municipalities should be so construed and applied as to make them valid and effective if the language does not exclude such interpretation. State *ex rel.* Lamar v. Dillon, *supra,* State *ex rel.* Johnson v. Johns, 92 Fla. 187, 109 So. 228.

In treating the potential laws the scope of inquiry of the Legislature is much broader than that of the judiciary when adjudicating their validity. The Legislature may strike down a proposed act on the ground of constitutional inva-

lidity, for reasons of policy or for other grounds deemed proper; but judicial inquiry is not clothed with the veto, is not concerned with questions of policy but must hold the act good unless shown to be in direct conflict with some designated provision of constitutional law. Neither can we strike an act down because of a supposed spirit to pervade the constitution or because we would have voted against it if we had been members of the Legislature or because it does not square with our peculiar or preconceived view on public policy. State *ex rel.* Johnson v. Johns, *supra.* State *ex rel.* McMullen, v. Johnson, *supra.*

The mere fact that the election board is self perpetuating does not make it invalid. Such provisions have been frequently upheld. State *ex rel.* Johnson v. Johns, *supra*; City of Americus v. Perry, 114 Ga. 871, 40 S. E. 1004, 57 L. R. A. 230; City of Waterbury v. Macken, 100 Conn. 407; 124 Atl. 5.

It is finally contended that Chapter 15533 is violative of Section 16 of Article 3 of the constitution in that the substance of the act is not briefly expressed in the title.

We have examined this challenge with care and we think as against it, the Act may be upheld on authority of State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 So. 929.

The demurrer to the replication is sustained and the motion for writ of ouster is denied.

Davis, C. J., and Whitfield, and Buford, J. J, concur.

Brown, J., dissents.