**HILLSBOROUGH INVESTMENT COMPANY, a corporation, v. LEROY S. WILCOX, et al.**

13 So. (2nd) 448                                    January Term, 1943
May 7, 1943                                                  En Banc
Rehearing Denied June 2, 1943

*Paul Game,* for appellant.

*George L. King,* for appellees.

CHAPMAN, J.:

The record in this case discloses that Helen M. Wilcox, a widow, during the year 1925, acquired by purchase a home for the sum of $7,000.00, located in Bradenton, Florida, and described as Lot 3 of Block 2 of the Emma Harris Addition to the said City. Helen M. Wilcox, during the Florida land boom in 1925, moved from the State of Massachusetts to the State of Florida. She had two children—one an afflicted daughter, Maude E. Wilcox, who died in April, 1935, and a son, Leroy S. Wilcox, a World War Veteran, who received wounds in the discharge of overseas duties, which required continuous treatment, and he was confined, from time to time, in government hospitals. He married in the Fall of 1934, and took his wife and continued to live with his mother, Helen M. Wilcox, a widow and sister, Maude E. Wilcox, at the mother's home in Bradenton, Florida. He and his wife lived in the home at the time of the institution of this suit. The afflicted daughter died in April, 1935, and Helen M. Wilcox, widow, died in October, 1937.

The homestead status of the aforesaid property is conceded from the year 1925 continuously until an uncertain date between 1935 and 1937. On March 22, 1929, the Citizens Bank & Trust Company obtained a judgment for the sum of $2,293.47, in the Circuit Court of Manatee County, Florida, against Helen M. Wilcox. Subsequently a liquidator was appointed for the bank and on December 1, 1938, the judgment was transferred or assigned to the Hillsborough Investment Company, appellant here.

It is contended by counsel for appellant that the aforesaid property lost its homestead status on an uncertain date between April, 1935, and October, 1937, and immediately on said date the judgment became a lien upon the real estate. The chancellor heard the testimony and decreed that the described real estate did not lose its homestead status; neither did the judgment so acquired against Helen M. Wilcox ever become a lien against the above described property.

Section 1 of Article X of the Constitution of Florida provides that a homestead to the extent of 160 acres of land or the half of one acre within the limits of a city or town, "owned by the head of a family residing in the State" (Florida) . . . shall be exempt from forced sale under process of any court. Section 2 of Article X *supra,* recites that the exemption provided for in Section 1 "shall inure to the widow and heirs of the party entitled to such exemption and shall apply to all debts, except as specified in said Section." In the case of Clark v. Cox, 80 Fla. 63, 85 So. 173, we held that where a homestead is acquired it can be waived only by abandonment or by alienation in the manner provided by law. See Lanier v. Lanier, 95 Fla. 522, 116 So. 867. The temporary absence from the homestead of the head of the family in search of health, pleasure or for business reasons, will not deprive it of the homestead status.

It is the duty of the courts when considering statutory and organic provisions applicable to homestead exemption to liberally construe the same in the interest of the family home, but these beneficient provisions should at no time be interpreted so as to make them instruments of fraud or unjust impositions upon the rights of creditors. See Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 43 A.L.R. 1409; Read v. Leitner, 80 Fla. 574, 86 So. 425; Hill v. First Nat. Bk., 79 Fla. 391, 84 So. 190, 20 A.L.R. 270. Equity has complete jurisdiction over homesteads and exemptions. See Bennett v. Bogue, 88 Fla. 109, 101 So. 206.

Who is the head of a family within the meaning of the Constitution, exempting homesteads from forced sale, must be determined from the facts of each case; there is no rule or invariable test, based solely upon dependence, and es-

pecially legal dependence. See DeCottes v. Clarkson, 43 Fla. 1, 29 So. 442; Jetton Lbr. Co. v. Hall, 67 Fla. 61, 64 So. 440, 51 A.L.R. (N.S.) 1121.

The case of Cumberland & Liberty Mills v. Keggin, 139 Fla. 132, 190 So. 492, involved property claimed as a homestead and exempt from forced sale. James W. Keggin owned homestead real estate on which he resided with his wife and two sons. The wife died, but the sons, both above 21 years of age, continued to reside or live with their father on the homestead. One of the sons married and thereafter, with his family, lived with his father on the homestead and was so living at the time of the father's death, the other son having moved away conveyed his interest in the homestead to his married brother then residing or living on the. homestead. The two sons were the sole heirs of their deceased father. The homestead was offered for sale under an execution based on a judgment obtained against James W. Keggin.

We held that there was a continuity in the family relationship of two or more persons then living on the homestead so as to make them a family and bring the property sought to be sold under execution under the exemption provisions of the Constitution and the homestead inured to the heirs of the judgment debtor.

Leroy S. Wilcox testified that he had resided continuously on the homestead property from 1932 until called as a witness on February 24, 1941. The family, prior to his marriage in December, 1934, consisted of the mother, Helen M. Wilcox, Maude E. Wilcox, his sister, and himself. His wife upon marriage in December, 1934, constituted an additional member of the family. On March 20, 1935, his sister, Maude E. Wilcox, went from Bradenton, Florida, to Quincy, Massachusetts, and died there around the 2nd of April, 1935. The mother owned a hotel in Quincy, Massachusetts and each Summer would go from Bradenton to Quincy and personally operate the hotel from June to Labor Day. She later lost the hotel by the foreclosure of a mortgage. She died in Bradenton, Florida, in October, 1937, at the age of 84 years, and the body was sent to Massachusetts for burial. She claimed Bradenton, Florida, as her home, where she received

the most of her mail from 1925 until her death in 1937. The mother paid most of the household expenses. Helen M. Wilcox paid taxes on the property for the years 1928 to 1937, and the tax receipts for 1935, 1936 and 1937 disclose the allowance of homestead exemptions.

Mrs. Martha Osborne, a resident of Bradenton, an acquaintance and neighbor of the Wilcox family since 1926 or 1927, testified that the mother, daughter and son his wife lived on the property as a family; that death removed the sister and subsequently the mother, but Leroy Wilcox never had any other home. It was the custom of Helen M. Wilcox during her lifetime, for business reasons, to spend each Summer in Massachusetts, and a roomer stayed in the Wilcox home for a short time.

Miss Alma Parker lived on adjoining property to the Wilcox family. She had known Helen M. Wilcox for 12 years and Leroy Wilcox for 10 years. She had been acquainted for several years with other members of the family. She testified that Helen M. Wilcox spent the Winters at her home in Bradenton and each Summer, or a part thereof, for business reasons, was spent in Massachusetts; and the parties lived together in their home in Bradenton for this period of time as one family.

Counsel for appellant contends that it is clearly established by the evidence that Helen M. Wilcox was *not* the head of a family, nor was she residing in the State of Florida between the dates of 1935 and 1937, and that there was an abandonment by her of her claims during this period to the homestead exemption recognized by the provisions of Section 1 of Article X of the Constitution and the conclusions or findings of fact on these disputes and conflicts appearing in the testimony as made by the chancellor are not sustained by substantial evidence in the record and the findings of fact constitutes reversible error.

Emphasis is placed on facts established by appellant appearing in the record viz: (1) death and burial of Maude E. Wilcox at Quincy, Massachusetts in April, 1935, and payment of funeral bill to John Hall Funeral Home; (2) application of Helen M. Wilcox for a wine and beer license at Quincy

(the application reciting that she is a voter of Quincy, Mass.) ; (3) an interview in June, 1935, with Helen M. Wilcox at 1 Bell Street, Quincy, Massachusetts, and Leroy S. Wilcox was residing at the same address; (4) plaintiff's Exhibit No. 30; (5) dependency statement dated January, 1936, signed at 1 Bell Street, Quincy, Mass. (6) foreclosure of mortgage against her at Quincy, Mass., during 1936; (7) application for old age pension when she recited she had lived at Quincy for 37 years; (8) pleading in a suit brought against her at Quincy; (9) statement of Leroy S. Wilcox made at 1 Bell Street, Quincy, to the effect that his mother was dependent on him for support; (10) contents of death certificate made at Bradenton for the transportation of the body of Helen M. Wilcox back to Quincy, Mass., for burial.

The above facts, when considered in connection with the testimony of Leroy S. Wilcox, Mrs. Osborne and Miss Parker to the effect that Helen M. Wilcox spent each Summer, or a part thereof, in Quincy, Mass., in connection with business interests, viz, the operation of her hotel from June to Labor Day of each year, explain many of the apparent conflicts. The daughter left Bradenton on March 20, 1935, and died at Quincy, Mass., on April 2, 1935, and the costs of burial are easily understood. There was a mortgage on the hotel and foreclosure was instituted and the property lost to Helen M. Wilcox. It is reasonable to assume that she applied for a license to sell wine and beer incident to the operation of her hotel and the question as to being a voter of Quincy possibly was a mere formality. A pleading was signed in another suit against her at Quincy. The interview with a representative of the Veterans' Bureau made at Quincy can be easily understood. The recital in the death certificate for the transportation of the body of Helen M. Wilcox from Bradenton to Quincy for burial cannot destroy the testimony of Mrs. Osborne and Miss Parker.

In the case of Lanier v. Lanier, 95 Fla. 522, 116 So. 867, we, in part, said:

"We agree with the proposition of law advanced by appellants that the homestead intended by our Constitution to be exempt is the place of actual residence of the party and his

family and that a temporary absence of the head of a family in search of health, pleasure or for business reasons will not deprive the homestead of its character and status as such unless there was a design of permanent abandonment. Matthews v. Jeacle, 61 Fla. 686, 55 South. Rep. 865; Murphy v. Farquhar, 39 Fla. 350, 22 South. Rep. 681. It is equally as well settled, however, by the cases just cited that a permanent abandonment of the homestead as a *bona fide* home and place of permanent abode strips it of its homestead character. A homestead is abandoned by taking up a permanent abode at a distant place. Whether there has been an abandonment of a homestead so as to deprive it of its status as such under the Constitution should be determined by a consideration of all the pertinent facts and circumstances of each case. Nelson v. Hainlin, 89 Fla. 356, 104 South. Rep. 589. The character of property as a homestead depends upon an actual intention to reside thereon as a permanent place of residence, coupled with the fact of residence."

The conclusion is irresistible that substantial testimony appears in the record to support the findings as made by the chancellor. See Kent v. Knowles, 101 Fla. 1375, 133 So. 315; Farrington v. Harrison, 95 Fla. 769, 116 So. 497.

Pertinent recitals in the challenged decree are viz:

'While there is considerable testimony in the record in this cause which would tend to show that Helen M. Wilcox may have returned to her former home in Quincy, Mass., after the death of her daughter Maude E. Wilcox in 1935, still there is clear proof that Helen M. Wilcox spent only a portion of each year in her Bradenton home. The bill of complaint further alleges that her home was in Bradenton, Florida and that she was the head of a family and that the property in question constituted her homestead until the death of her said daughter Maude. The Court has not overlooked the fact that Helen M. Wilcox at a time while she was in Quincy, Mass., made application for old age assistance in that state. Whether such assistance was extended is not clearly shown in this case by the evidence. It is clearly established that at the time she was claiming homestead exemption by virtue of the tax laws of the State of

Florida and that the same was allowed in relation to the property in question. It is further clearly established that at the time Helen M. Wilcox established her home in the State of Florida she possessed considerable means and that the time of her death she was approximately eighty four years of age and by virtue of her investments in Florida in the boom days, she had lost practically all, if not all, of her property except her Bradenton home. . . .

"Passing now to the second question, namely whether Helen M. Wilcox was the head of a family between the date of the death of her daughter Maude in 1935 and her death in October 1937, it is shown clearly that Leroy S. Wilcox is a disabled War Veteran and that for a period of years he has been allowed disability compensation. It is further clearly established that for a period of years an additional sum was allowed to his mother by reason of claimed dependency, and as shown by page 9 of the testimony, of Capt. Leister, the original application for dependency was dated March 7th, 1933. There is also undisputed testimony that at several dates subsequent to 1933, Helen M. Wilcox had made contributions to her son of substantial amounts to aid him in the conduct of his business and likewise to provide medicine. It further appears that from a date prior to the death of Maude E. Wilcox in 1935 until and including the date of the taking of the testimony, Leroy S. Wilcox had no home other than that provided by his mother. . . .

"Wherefore the Court is of the opinion that the relief sought by plaintiff should be denied and that the title of the defendant to the property in question should be quieted against all claims of and by the plaintiff, by virtue of its said judgment.

"It Is Thereupon Ordered that plaintiff's bill be dismissed and that the title of defendant to the property in question be decreed to have been the homestead of Helen M. Wilcox at the time of her death and that the same descend to Leroy S. Wilcox as her sole heir at law, free and discharged of the lien and the judgment of the plaintiff."

The bill of complaint filed February 22, 1940, and amendment involved only Lot 3 of Block 2 of Emma Harris Addition

to the Town of Bradenton. It prayed for an order decreeing the aforesaid property not exempt from but subject to the judgment lien of the plaintiff. Pursuant to an order permitting an amendment to the original bill, the appellant set forth that it had recently discovered that Helen M. Wilcox was not, at the time of her death, and prior thereto, a resident of Manatee County, Florida, but a resident of the State of Massachusetts; and that she was entirely dependent on her son, Leroy S. Wilcox, for her support. It recited further that the allegations in the petition filed in the County Judge's Court of Manatee County, Florida, under the several provisions of Chapter 16992, Acts of 1935, Laws of Florida, to the effect that Helen M. Wilcox was a resident of Manatee County, Florida, and the head of a family at the time of her death were false and untrue and were an imposition on the County Judge of Manatee County; that the order of the County Judge granting the petition would not have been entered except for fraud and imposition and for said reasons the order so entered should by the circuit court be declared null and void and of no effect because of the aforesaid fraud and imposition.

It is contended that Chapter 16992, Acts of 1935, Laws of Florida, authorizing the entry by a County Judge of an order adjudicating what property constitutes the homestead of a decedent and the proper legal heirs entitled to receive the estate, without administration, violates the organic law and is unconstitutional and void. Several cases are cited to sustain this contention.

Presented on the record is a difficult question appearing at the very threshold when considering this contention. The chancellor decreed that Helen M. Wilcox was at the time of her death the head of a family residing within the State of Florida and the homestead as described in the pleadings and the final decree was exempt from forced sale under the execution based on the judgment owned by the Hillsborough Investment Company, appellant here. Since the decree of the chancellor is affirmed by this Court, the controlling question for adjudication, as we see it, is what interest, if any, does the appellant own or possess in and to the homestead prop-

erty that gives it a sufficient standing in court to raise the constitutionality of Chapter 16992, *supra,* or an order of the County Judge of Manatee County made thereunder and affecting the homestead property of this decedent and to adjudicate the heirs or owners thereof?

It is established that a party seeking adjudication of the courts on the constitutionality of statutes is required to show that his constitutional rights have been abrogated or threatened by the provisions of the challenged act. See State ex rel. Pringle v. Dykes, 127 Fla. 665, 173 So. 904. Ordinarily this Court will not consider the objections to the constitutional validity of an Act by one whose interest is not affected. See State ex rel. Landis v. Dyer, 109 Fla. 33, 148 So. 201. The courts are without power *per se* to inquire into the validity of public laws in proceedings brought directly for such purpose by one whose rights are not affected by the operation of the Act. See State ex rel. Crim v. Juvenal, 118 Fla. 487, 159 So. 663.

We fail to find error in the record and accordingly the decree appealed from is hereby affirmed.

It is so ordered.

TERRELL, BROWN, and SEBRING, JJ., concur.

BUFORD, C. J., THOMAS and ADAMS, JJ., dissent.