60 So.2d 190 (1952)
BECK
v.
WYLIE et al.
Supreme Court of Florida, en Banc.
August 8, 1952.
Anna A. Krivitsky, Harris & Harris, St. Petersburg, and Carswell, Cotton & Shivers, Tallahassee, for appellant.
W.G. Ramseur, St. Petersburg, for appellees.
MURPHREE, Associate Justice.
Shortly before she died Lena T. Naylor by will placed all of her property under a spendthrift trust for the use and benefit of her 43 year old daughter and sole heir at law, the appellant, who now claims the homeplace of her mother free of the trust on the theory that it was homestead property and therefore not subject to being devised.
Upon separating from her third husband in June, 1947, appellant came to her mother's *191 home to live. She thereafter received no support from her husband, but worked for four or five months at a weekly wage of about $20. She performed the major portion of the household duties. Mrs. Naylor, however, continued to be in charge of the home and personally attended to all of her own business affairs, relating to an estate worth about $100,000, although she was suffering from a condition which progressively grew worse and finally terminated in her death the following July. From the time of appellant's first marriage at the age of 23 her father gave her a monthly allowance of $100, until he died. Her mother then continued such allowance until she passed away.
In the latter part of March, 1948, appellant moved out of the home of her mother and made her abode with a man named Beck, with whom she had been keeping company since about a month prior to the divorce from her last husband becoming final in December, 1947. She married Beck one week after her mother died.
The evidence is in conflict as to the reason appellant moved away from the home of her mother. Her version is that she became nervous and her mother was ill, so each got on the other's nerves to the extent that it was deemed advisable that they not remain in such close association, but that an employed attendant should take appellant's place in the home, temporarily, until her mother's health should improve. Mrs. Naylor thereupon furnished appellant funds for a trip out west, but she did not go because her mother's condition grew worse. Appellant denominated her association with Beck as just "an affair". On the other hand, appellees contend that appellant abandoned her mother's home purely to be with Beck, not intending to return.
The Chancellor decreed, in effect, that the essentials of a homestead within the meaning of the Florida Constitution, Section 1 of Article X, F.S.A. did not exist from the time appellant returned to her mother's home in June of 1947 until she departed in March of 1948, and that, therefore, the testamentary trust was valid as to the homeplace. Consequently, the Chancellor did not pass upon the question of abandonment of the homestead by appellant.
It seems apparent from the decree that the Chancellor based his ruling upon the belief that appellant was not dependant upon her mother for support, and, further, that her mother could not be deemed the "head of a family", within the requirement of the Constitution, Section 1 of Article X, because appellant exhibited no "* * * obeisance to and acceptance of parental discipline * * * or acknowledgment of that relation."
During the period stated, however, appellant received more at the hands of her mother by way of support ($100 per month, food, some clothing, and a home to live in) than the $20 per week which she earned through her own efforts for a few months. And it was not shown that she was capable of earning more. We grant that the daughter's affinity for intoxicants and her general conduct must have been trying to her mother, but Mrs. Naylor was clearly the manager of her own home; she was the provider; there was some degree of filial affection between mother and daughter; and they did live together in the relationship of one family. It is also worthy of note that the home in question was not purchased by Mrs. Naylor until appellant had separated from her husband and she could be consulted and give her approval of it as a home for the two; and Mrs. Naylor claimed homestead exemption on the place for tax purposes for the year 1948.
Crosby and Miller, in discussing the meaning of "family headship" in their article, "Our Legal Chameleon, The Florida Homestead Exemption," (1949) Vol. II, No. 1, page 24, et seq., University of Florida Law Review, reached this conclusion:
"The decisions, though numerous, disclose two basic tests, which may be met together or in the alternative: (1) the legal duty to maintain arising out of the family relationship at law, and (2) continuing communal living by at least two individuals under such circumstances that one is recognized as the person in charge. Stated broadly, *192 there must be a family at law, or a family in fact, or both."
The present case meets the latter test, unless appellant be deemed to have abandoned the family relationship when she ceased to live with her mother. This view is more in keeping with our prior decisions than the ruling of the Chancellor.
In the case of DeCottes v. Clarkson, 43 Fla. 1, 29 So. 442, a homestead was held to exist where the family consisted of the mother, who owned the home, and an adult, healthy daughter, who assisted in attending to the household affairs and assisted her mother in connection with the latter's estate, out of a sense of filial duty and affection, the daughter being supported by her mother as long as she lived.
In Caro v. Caro, 45 Fla. 203, 34 So. 309, two, grown, unmarried daughters lived with their mother in her home until she died. Both by sewing earned enough for their support, except for the food they ate at their mother's table. One acted as nurse for her mother when she became in feeble health, and the other attended to the duties as housekeeper, and to her mother's outside affairs. It was held that the mother was the head of that family; the property was homestead; and, therefore, the mother's devise of the property to the two daughters who had lived with and cared for her was void as to other children not included in the will.
The case of Davis v. Miami Beach Bank & Trust Co., 99 Fla. 1282, 128 So. 817, involved a situation where a son over 40 years of age, afflicted and unable to work, lived with his widowed mother in her home and was supported by her largely through contributions from her other children. There was no dispute as to who was the head of the family, the mother being so recognized by all of the children. A homestead was held to exist. The question of abandonment arose in this case, but merely renting the home temporarily from time to time was not deemed to be an abandonment.
Hillsborough Inv. Co. v. Wilcox, 152 Fla. 889, 13 So.2d 448, 450, was a case where a disabled, war veteran son and his widowed mother lived together in the mother's home. The son had no other home. He worked but his mother contributed from time to time to his support. It was held that the mother was the head of the family and the property homestead. A serious question of abandonment arose in this case due to the fact that the mother owned and operated a resort hotel in Massachusetts during the summer months. This issue, however, was resolved in favor of the homestead character of the property in dispute. This court in the opinion said:
"In the case of Clark v. Cox, 80 Fla. 63, 85 So. 173, we held that where a homestead is acquired it can be waived only by abandonment or by alienation in the manner provided by law. See Lanier v. Lanier, 95 Fla. 522, 116 So. 867. The temporary absence from the homestead of the head of the family in search of health, pleasure or for business reasons, will not deprive it of the homestead status."
A fortiori, unless the daughter permanently abandoned the home of her mother and the family relationship which she had established with her, the property in question was homestead in character and could not be devised. Article 10, Section 4, Florida Constitution. This question cannot be determined from the record, as a matter of law, but must be resolved by the Chancellor as an issue of fact.
Reversed, with directions to the Chancellor to decide upon the existing record whether or not the appellant's departure from her mother's home constituted an abandonment, and to decree accordingly.
TERRELL and MATHEWS, JJ., and GORDON, Associate Justice, concur.
SEBRING, C.J., and THOMAS and ROBERTS, JJ., dissent.