**In re Raymond J. WIERSCHEM et ux., Debtors.**

**Bankruptcy No. 92–02995–BKC–6C7.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

March 18, 1993.

Neil J. Buchalter, Titusville, FL, Robert H. Pflueger, Altamonte Springs, FL, for debtors.

David J. Volk, Melbourne, FL, for Objecting Creditors, Yvan Couture, Lynn Couture, Michel Couture and Pauline Couture.

Leigh R. Meininger, Orlando, FL, for Trustee.

James C. Orr, Trustee, Titusville, FL.

United States Trustee, Orlando, FL.

## DECISION ON OBJECTIONS TO DEBTORS' CLAIMS OF EXEMPTION

**C. TIMOTHY CORCORAN, III,**
Bankruptcy Judge.

This Chapter 7 case is before the court on objections to claimed exemptions filed by the creditors, Yvan Couture, Lynn Couture, Michel Couture, and Pauline Couture, as well as the Trustee, James C. Orr. The creditors, trustee, and debtors entered into a joint stipulation of facts pertaining to the real and personal property at issue. Unless otherwise specified, the facts recited here are as stipulated.

On the facts of this case, the court sustains the objections and concludes that the real property does not meet the requirements of the homestead exemption as set forth in Article X, Section 4, of the Florida Constitution. Subject to the limitations described here, therefore, the property is subject to administration by the trustee for the benefit of the debtors' estates. The court also concludes that the debtors' personal property has a value in excess of the $2,000 allowed under Article X, Section 4, of the Florida Constitution and that the surplus property is subject to administration.

## I.

### A. Real Property

On May 15, 1992, the debtors, Raymond J. and Marcella J. Wierschem, filed a joint petition under Chapter 7 of the Bankruptcy Code. On their schedules, the debtors claimed real property located at 3417 South Atlantic Avenue, Cocoa Beach, Brevard County, Florida, as exempt homestead property pursuant to Article X, Section 4, of the Florida Constitution. The legal description of the property is:

> Block 1, Lots 4 and 5, Orlando Beach Subdivision as recorded in Plat Book 9, Page 43, of the Public Records of Brevard County, Florida.

In their schedules, the debtors stated that the current market value of the real property is $200,000 and that it is encumbered by mortgage liens totaling $83,000.

The real property is located outside a municipality and occupies less than 160 acres of land. Zoning regulations of the Brevard County Code applicable to the property do not permit partition of the property.

There are two free-standing structures located on the real property. One of the free-standing structures contains three dwelling units. The other structure contains two dwelling units. The separate units were set apart or constructed for rental purposes. All units have internal dividing walls and can be separated by vertical lines. The units have separate entrances, and each is a self-contained dwelling containing kitchen and bathroom facilities.

The debtors reside in one of the dwelling units in the three unit structure. The debtors' residential unit is approximately 1,400 square feet in size, and the other two rental units in that structure are approximately 400 square feet each. The second building is approximately 1,800 square feet in size and is divided equally between two residential units.

All residential units not occupied by the debtors are leased to third parties for $500 per month per unit. The debtors lease the rental units for minimum terms of six months.

The units are beach apartments. They are located on Highway A1A across from the Atlantic Ocean.

The creditors and trustee objected to the claim of exemption for this property. The basis for the objection is that the property is rental property rather than homestead and therefore not exempt from the claims of creditors.

### B. Personal Property

The debtors claimed in their schedules the following personal property as exempt with a zero equity:

A. 1988 Toyota Camry; and

B. 1988 Honda Civic.

The debtors scheduled the automobiles as having market values of $4,750 and $2,400, respectively, with secured claims

against them of $4,900 and $2,450, respectively.

Although the parties' stipulation sets forth these facts, the debtors and the creditors are not able to agree on the actual values for the automobiles. For purposes of this contested matter, the debtors supported their scheduled values with a brief affidavit of the debtor husband. In the affidavit, the debtor states that, "in order to determine a realistic value for said vehicles [he] had those vehicles appraised by several used car dealerships in the Brevard County area." The debtor then recites that the scheduled values are based upon those "evaluations" as well as his own "personal knowledge of the values of automobiles." The affidavit contains no further information.

Upon the creditors' request and pursuant to F.R.Evid. 201, the court takes judicial notice of the following facts to which the parties have not stipulated:

a. The May, 1992, NADA "blue book" range of values for a 1988 Toyota Camry is from $6,650 to $8,450 retail value and $5,375 to $7,050 for wholesale value; and

b. The May, 1992, NADA "blue book" range of values for a 1988 Honda Civic is from $4,250 to $6,050 retail value and $3,275 to $4,925 for wholesale value.

The creditors objected to the exemption of this personal property on the ground that the automobiles have equity that exceeds the available exemption allowance. The trustee did not object to these claims of personal property exemptions.

## II.

Article X, Section 4, of the Florida Constitution, which governs the resolution of the real property exemption issue, provides in pertinent part as follows:

*Homestead—exemptions*

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to *the residence of the owner or his family....* (emphasis added).

While the Florida Constitution does not define the term "homestead," it does provide various limitations and requirements. Among these are an acreage limitation, an ownership requirement, and a residency limitation. At issue in this case is the residency limitation.

■ The Florida Constitution provides exemption protection to a piece of real property only so long as the property is the residence of the owner or the owner's family. Moreover, the property must be the place of actual residence of the owner or the owner's family. *Hillsborough Investment Co. v. Wilcox,* 152 Fla. 889, 894, 13 So.2d 448, 451 (1943).

A number of Florida bankruptcy courts have addressed the issue of rental units located on the same parcel of *municipal* property constituting the homestead of the debtor. *See In re Rodriguez,* 55 B.R. 519 (Bankr.S.D.Fla.1985); *In re Aliotta,* 68 B.R. 281 (Bankr.M.D.Fla.1986); and *In re Englander,* Case 90–03798–BKC–6C7, 1992 WL 494995 (Bankr.M.D.Fla.Orl.Div., Sept. 8, 1992) (Order Granting Partial Summary Judgment). All support the proposition that partial use of homestead property for rental purposes invalidates a claim of exemption as to that part of the property.

In *Rodriguez,* the court sustained the trustee's objection to homestead exemption on a piece of real property that consisted of a free-standing one-story building in Hia-

348

leah, Florida. The building was separated by an internal wall with each section having a separate entrance. One section was rented to a tenant. 55 B.R. at 520.

The court held that the homestead exemption was limited to that portion of the property occupied by the debtors as their residence on the date of the filing of the bankruptcy petition and could not include that portion of the property that was rented to and occupied by a third party. The court grounded its holding on the residency requirement in the Florida Constitution. *Id.*

Likewise, in *Aliotta,* the court held that three of four units in a multi-family building were not part of the debtor's residence and therefore not entitled to exempt status. 68 B.R. at 282. The court reasoned that the "elimination of the business property reference from Article X, § 4 [of the Florida Constitution] shows unequivocal intent to limit homestead exemptions to the residence of the owner and to disallow any claim for an exemption that exceeds the residence of the owner." *Id.* The court further suggested that the trustee would be entitled either to sell the three units that were not exempt or to institute an action under Section 363(f) of the Bankruptcy Code to sell the property free and clear of any interest in the property. *Id.*

In contrast, the court in *Englander* overruled the trustee's objection to a claim of exemption for a rental garage apartment. *Order Granting Partial Summary Judgment* at 10. Importantly, the rental of the garage apartment was a secondary, minor issue in the *Englander* decision because the homestead property claimed exceeded the acreage limitation provided by the Florida Constitution. The court upheld the exemption for the garage apartment because it was originally built for utility purposes and not rental purposes. The trustee did prevail, however, on the substantially more significant objection to the acreage claimed. *Id.*

■ Although there has been no reported decision regarding *rural* property rendered in this court, the decision reached in *Shillinglaw* is instructive. *In re Shillin-*

*glaw,* 81 B.R. 138, 140 (Bankr.S.D.Fla. 1987), *aff'd,* 88 B.R. 406 (S.D.Fla.1988). In *Shillinglaw,* the debtors claimed an exemption for a parcel of rural property comprised of ten contiguous acres with a residence, a barn, and a trailer. The property was located outside the limits of any city. An objection was made to that part of the property that was occupied by the house trailer and the barn because they were leased to and occupied exclusively by a tenant. The tenant lived in the trailer and sublet the stalls in the barn to others. The objecting creditors argued that the homestead was abandoned by the debtor when and to the extent that the property was leased to a third party.

The court sustained the objection, finding that there was no overt or announced intent in drafting Article X, Section 4, of the Florida Constitution to limit the residency requirement to city homesteads only. The court's reasoning is especially pertinent given the fact that the court had previously participated in the deliberations of the Commission that drafted the present Constitution. The court wrote:

> I cannot believe, however, that the construction of a hotel, apartments, or homes on rural property and the leasing of those accommodations to provide homes for others would shield the property so used from creditors' claims merely because the owner lives in one of those units.
>
> *   *   *   *   *   *
>
> I doubt that anyone could intend, for example, to permit a property owner on Key Biscayne (an unincorporated area) to shield a 1,000 room hotel from his creditors' claims merely because it was built on less than 160 acres owned by him and he lives in one of the rooms. If *that* result was not intended by our present Constitution, the facts of this case differ only in degree, not in principle.

81 B.R. at 140 (emphasis in the original).

In the present case, the debtors have cited *In re Israel,* 94 B.R. 729, 730 (Bankr. N.D.Fla.1988), for the proposition that rural homestead property is not subject to the

same residency restrictions as are imposed on municipal property. In *Israel*, the debtor leased more than three quarters of the total acreage of her rural property to a farmer, while residing in a trailer on the remaining acreage. The court, relying on *Fort v. Rigdon*, 100 Fla. 398, 129 So. 847 (1930), held that "the homestead exemption applies to the total acreage [of rural property] allowed without regard to the use that may be made of that portion of the tract not covered by the residence when the land is actually occupied and lived on by the owner." *Israel*, 94 B.R. at 730. Implicit in the decision was an acceptance by the court of the principle that rural and municipal homesteads are accorded different protection.

■ This court declines to adopt the reasoning of *Israel* and instead accepts the reasoning of *Shillinglaw* as more correctly advancing the intent of the homestead exemption contained within the Florida Constitution. Moreover, the court notes that the homestead exemption is subject to equitable considerations. *Hillsborough Investment Co.*, 152 Fla. at 891, 13 So.2d at 450. The exemption is intended to protect the family home and not to unjustly impose upon the rights of creditors. *Id.*

■ In the instant case, the debtors have very few creditors and, by their own scheduled admissions, have equity of $117,000 in the property claimed as homestead. The beach property is predominantly rental real estate with the debtors occupying only 1,400 square feet of the total 4,000 square feet available for residential use. In addition, the rental units were constructed with the express intention of deriving income from their use, unlike the garage apartment at issue in *Englander*. The real property, therefore, is subject to administration by the trustee to the extent that it exceeds the residency limitation imposed by the Florida Constitution.

Regarding the manner in which the real property shall be administered, the court follows the *Englander* mechanism for fairly allocating homestead and non-homestead values where the claimed exemption is not completely invalidated. In that case, the court held that, when property is not legally or factually divisible between exempt homestead and non-exempt excess real property, the trustee, as co-owner of the property, has the legal right to sell the property and apportion the proceeds among exempt and non-exempt interests. Adopting the reasoning of *O'Brien v. Heggen*, 705 F.2d 1001, 1004 (8th Cir.1983), the *Englander* court concluded that apportionment allows an appropriate recognition of a debtor's homestead exemption and yet affords creditors some satisfaction of their rightful claims. *Englander* at 17.

Accordingly, the court will sustain the objection to the claim of the homestead exemption as to the four rental apartments and overrule the objection as to the debtors' residential apartment. Because the property is indivisible, the court will permit the trustee to sell the entire real property and divide the proceeds, after satisfying mortgage and other liens of record and paying the ordinary and necessary costs and expenses of sale and closing, between the estate and the debtors as follows: the estate shall be entitled to the portion of the net proceeds that the square footage of the four rental units bears to the total square footage of the two structures; the debtors shall be entitled to the portion of the net proceeds that the square footage of the debtors' residential unit bears to the total square footage of the two structures.

### III.

■ Regarding the creditors' personal property objection, the court concludes that the NADA "blue book" is a more accurate and reliable indication of the value of automobiles than are the amounts scheduled and supported by the debtor husband's brief affidavit. Importantly, nothing in the affidavit suggests that these automobiles are in a condition that would make the "blue book" an inaccurate source or reference as to value. Although a debtor's testimony could clearly support a value different from the "blue book" value, the blue book is more reliable than a naked number placed in the debtors' schedules supported in the manner the debtors have done here. When the court has nothing but these two

alternatives from which to choose in determining the value of an automobile, the court will choose the "blue book" as being substantially more accurate and persuasive. The creditors have therefore carried their burden on this record. F.R.B.P. 4003(c).

Using the "blue book" values, the debtors' equity in the automobiles and the other personal property they have claimed as exempt is greater than the $2,000 exemption allowance. The objection is, therefore, sustained. The trustee shall administer the automobiles. Upon sale, the trustee shall retain for the estate the net proceeds over the debtors' $2,000 personal property exemption, taking into consideration the other items of personal property the debtors have claimed as exempt.

### IV.

This is a contested matter pursuant to F.R.B.P. 9014. The court has jurisdiction of the parties and of the subject matter pursuant to 11 U.S.C. §§ 101 *et seq.,* 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the general order of reference entered by the district court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). In accordance with F.R.B.P. 9021, the court will enter an appropriate judgment.