**In re Edward W. ENGLANDER et ux., Debtors.**

**Bankruptcy No. 90–03798–BXC–6C7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Sept. 10, 1992.

Peter Hill, Orlando, FL, for debtor.

George E. Mills, Jr., Orlando, FL, trustee.

Leigh R. Meininger, Orlando, FL, for trustee.

David E. Peterson, Orlando, FL, for First Union Nat. Bank of FL.

Samuel J. Zusmann, Orlando, FL, for Transamerica Commercial Finance Corp.

### ORDER GRANTING PARTIAL SUMMARY JUDGMENT

HENRY H. DICKINSON, Bankruptcy Judge.

To paraphrase an old saying "a debtor's homestead exemption is his castle." This matter is currently before the Court on the parties cross motions for summary judgment on the debtors' claimed homestead exemption. The specific question posed to the Court is how may a debtor, under Florida law, lay out his castle.

On November 30, 1990, Charles F. Edwards, Trustee, First Union National Bank of Florida, and Transamerica Commercial Finance Corporation ("objectors") moved to deny various exemptions of property claimed by the debtors, Edward W. Englander and Phyllis S. Englander (Document No. 34). The debtors responded on December 19, 1990 (Document No. 44). The objectors moved for summary judgment on the homestead exemption issue on March 29, 1991 (Document No. 79), and the debtors cross-moved for summary judgment on April 22, 1991 (Document No. 100). The parties have agreed and stipulated that there are no genuine issues of material fact and that this matter is ripe for resolution on the cross motions for summary judgment.

### UNDISPUTED FACTS

On or about September 27, 1990, Edward and Phyllis Englander ("debtors") filed a joint petition under Chapter 7 of the Bankruptcy Code. In their petition, as amended the debtors listed approximately $16,750,-000.00 in total Liabilities and $7,700,000.00 in total assets. The debtors also claimed over $2,400,000.00 as exempt property including their residence at 440 Henkel Circle in Winter Park, Florida ("residence") in which they claim their homestead exemption.[1] In their initial bankruptcy schedules the debtors claimed their entire homestead exempt. This claim of a homestead exemption in the entire residence was without any legal basis as the residence's acreage greatly exceeded the allowable amount which could be exempted under Florida Law.

The residence in question lies within the city limits of Winter Park, Florida. The

---

1. The Court notes in passing that the debtors listed the value of their home in May 1988, at $900,000.00 while listing its value at only $700,-000.00 in their September 1990 schedules.

property is located on a lake front tract and contains a one story residence and a detached two story garage which the debtors rent to a third party. The parties agree that the tract of land on which the residence is located cannot be subdivided due to local zoning and building regulations.

On November 30, 1990, the objectors timely filed their formal objections to various exemptions claimed by the debtors including the homestead exemption. In their answer to the objection the debtors "admitted" that the size of the homestead was .57 acres, slightly larger that the .5 acres allowable as a homestead under Florida law.[2]

Later in this proceeding, the debtors reluctantly admitted that their previous statements concerning the size of the lot upon which their residence was located had been "in error" and on the basis of a survey admitted that the actual size of the lot was 1.05 acres, more than twice the acreage allowable as an exemption under Florida Law.

On March 28, 1991, the debtors filed a "Notice of Second Amendment" to schedule B–4 [Exemptions]". This second amendment attempted to further "clarify" the exact legal description of the property claimed exempt by the debtors in the tract containing their residence. While the legal description contained in the second amendment was hopelessly defective, pleadings later filed by the objectors included a survey map showing the exact property claimed exempt by the debtors (see attached Exhibit "A").

As can be clearly noted from Exhibit A, the .5 acres in which the debtors claim an exemption totally surrounds the .55 acres of the residence in which the debtors cannot claim an exemption. This designation of exempt property by the debtors renders the non-exempt tract worthless since there is no access to roads, utilities or lake frontage. It is clear that the non-exempt tract, as cunningly configured by the debtors, can neither be conveyed by a recordable deed nor could a house or any other improvements be built there. From its review of the pleadings, this Court finds that the debtors' designation of the exempt portion of the debtor residence was specifically made in order to eliminate any value which the non-exempt tract might have with the intent to defraud their creditors. *See generally, Norwest Bank Nebraska, N.A. v. Tveten,* 848 F.2d 871 (8th Cir.1988). This attempt at homestead exemption "gerrymandering" was clearly made in bad faith.

## LEGAL DISCUSSION

In the present action the Court is faced with four legal questions:

1.) Should the debtors be permitted to Amend their original claim of exemption?;

2.) Are the debtors entitled to a homestead exemption in the garage apartment rental property?;

3.) Do debtors have an absolute right to designate their State law homestead in any contiguous shape without regard to the rights of their creditors to the non-exempt tract?; and

4.) If a property is not legally and/or factually divisible between exempt homestead and non-exempt excess real property, does the Trustee, as a co-owner of the property, have the legal right to sell the property?

The Court shall address these legal issues in order.

### 1.) THE AMENDED B–4 SCHEDULE

■ The first issue is the propriety of the debtors' amendment of their schedules to specifically designate .50 acres as home-

---

**2.** Art. 10, § 4(a)(1) provides: "(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon except for the payment of taxes and assessments thereon, obligation contracted for the purchase, improvement or repair thereof, or obligations contracted for the house, field or other labor performed on the realty, the following property owned by a natural person:

(1) a homestead, if located outside a municipality, to the extent of one hundred sixty acres of contiguous land and improvements thereon, which shall not be reduced without the owner's consent by reason of subsequent inclusion in a municipality; or if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family"

stead rather than the entire 1.05 acres as originally designated in the petition. The objectors' argue that the filing of the original schedule was the debtors' designation of a homestead exemption under Section 222.02 of the Florida Statutes and that no amendment to that declaration should be allowed. While it may be true that the filing of a bankruptcy petition is analogous to the levy described in that statute, this Court believes that F.R.B.P. 1009(a) and 4003(b) clearly contemplate amendments to exemption schedules and all relevant case law indicates that such amendments to claimed exemption to be liberally allowed. Therefore this Court recognizes the debtors' right to amend their claim of homestead exemption. However, it is important to note that allowing an amendment claiming an exemption is extremely different from allowing the exemption itself.

## 2.) THE GARAGE APARTMENT

■ The next issue before the Court, concerns the portion of the residence claimed as exempt which contains a garage apartment, which is rented by the debtors on a month to month basis. The objectors assert that because the apartment is rented out, it does not qualify as homestead under the Florida Constitution. The Constitution provides that "[T]here shall be exempt from forced sale under process of any court ... (1) a homestead, ... if located within a municipality, to the extent of one-half acre of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family...." FLA. CONST. art. X § 4 (1968).

The starting point of this Court's analysis of this minor point is whether the garage itself qualifies as homestead property. Garages, either detached from or attached to a home are "conventional residential appurtenances—all well within the ambit of the Constitution homestead exemption." *White v. Posick*, 150 So.2d 263, 265 (Fla. C.A., 1963). In *White*, a swimming pool and a screened patio were given homestead status as an integral appurtenance, and the garage used by the debtors in this case is no different. This court agrees with the

Florida Supreme Court's statement in *Armour & Company v. Hulvey*, 73 Fla. 294, 74 So. 212 (Fla.1917) that "the exemption of a half acre within the limits of any incorporated city or town would doubtless include such outhouses, barns, wagon houses, garages, wood or coal sheds, chicken houses and fences, etc., as were appurtenant and subsidiary to and used in connection with the residence as conveniences and auxiliaries, although they are not expressly mentioned as being included in such exemption." *See also*, 1952 Op.Att'y Gen. 352.

■ The apartment situated above the garage is more troublesome. The original constitutional provision allowed an exemption for urban property that was the "residence and business house of the owner." FLA. CONST. art. X § 1 (1885, amended 1968). The Constitution currently allows an exemption only for the owner's residence. Judge Paskay in *In re Aliotta*, 68 B.R. 281 (Bank.M.D.Fla.1986) held that the "elimination of the business property reference from Article X, § 4 shows unequivocal intent to limit homestead exemptions to the residence of the owner and to disallow any claim for an exemption that exceeds the residence of the owner." *Id.* at 282.

The controversy over the homestead status of garage apartments is not a new one. In *Smith v. Guckenheimer*, 42 Fla. 1, 27 So. 900 (Fla.1900), the Florida Supreme Court denied the homestead exemption as to a portion of a two story building by "dividing the building by perpendicular lines" to allow the claimant to have a residence over his business house. *Id.* at 27 So. 901. In *Smith*, the claimant owned a two story building with five ground-floor storefronts and bedrooms on the second floor. The claimants' storefront was directly below their residence such that a perpendicular or vertical line could be drawn separating the claimants' residence and storefront from the other tenants' storerooms. *Id.*

The Florida Supreme Court retreated from the strictness of the *Smith* decision in *Cowdery v. Herring*, 106 Fla. 567, 143 So. 433 (1932). *In Cowdery*, the homestead claimant owned a residence as well as a

commercial garage and storage building. The Court held that under the old constitutional provision, these buildings could be classified as the owner's business house and therefore were entitled to homestead status. *Id.* at 143 So. 435.

The reasoning in *Cowdery* was criticized seven years later in *McEwen v. Larson*, 136 Fla. 1, 185 So. 866 (1939), where the Florida Supreme Court stated that an apartment house for rent is not a business house, but that *Cowdery* was not inconsistent because the garage there "had been used as a part of the city homestead property," whereas in *McEwen*, the owner built the apartment house and garage for rental purposes. *Id.* at 185 So. 868. Thus, the determining factor became whether or not the owner intended to rent the improvement when it was added to homestead property. Thus, in *McEwen*, the homestead exemption as to the apartment house and its underlying land was abandoned by the owner when the apartment house was built. *Id.*

The *Smith* doctrine was applied to the owner's benefit in *Lockhart v. Sassier*, 156 Fla. 339, 22 So.2d 763 (1945). In *Lockhart*, the owner built a six unit apartment house and resided in the ground floor unit. The Court held that since the "entire house was under one roof and was not divisible by a perpendicular line without destroying or eliminating" the owner's home, the entire property was entitled to homestead protection. *Id.*, 22 So.2d at 764. Neither *Cowdery* nor *McEwen* were applied by the court because they both dealt with improvements unattached to the residence of the owner. *Id.*

The Florida Supreme Court again returned to the *Cowdery* reasoning that rental property can constitute an owner's business house in *Union Trust Company v. Glunt*, 85 So.2d 877 (Fla.1956). The Court held that the residence and business house language in the 1885 Constitution was flexible enough to include the different trades owners might have. *Id.* at 879. The Court stated that "garage apartments are frequently placed adjacent to the home for rental as well as utility purposes." *Id.;*

*see, White v. Posick,* 150 So.2d 263, 265 (Fla.C.A.1963) ("the usages of defendant's garage apartment were ... within the "utility" classification set out in the Glunt case"); *see also, Weiss v. Stone,* 220 So.2d 403 (Fla.C.A.1969) (determination of homestead character when partially residential and the rest income producing is factual one).

After the 1968 amendment, which removed the business house language from the exemption, only a few cases have dealt with the rental apartment issue. Judge Britton in *In re Rodriguez,* 55 B.R. 519 (Bank.S.D.Fla.1985) held that a portion of a free-standing one-story building which was rented on a monthly basis was not entitled to the homestead exemption. *Id.* at 520. The building in Rodriquez had an internal wall between the portion used by the debtors and the portion rented out. Also, the rental unit had a separate entrance. Id. Thus, it appears that the *Smith* and *Lockhart* analysis regarding the severing by perpendicular lines survived the constitutional amendment, although those cases were not cited by the *Rodriguez* court.

Judge Cristol criticized the *Smith* and *Lockhart* reasoning in *In re Kuver,* 70 B.R. 190 (Bank.S.D.Fla.1986). In *Kuver,* the debtors resided in half of the duplex they owned. The other half was rented to tenants for monthly rent. *Id.* at 191. The Court reasoned that the perpendicular line analysis of *Smith* and *Lockhart* was antiquated in light of the modern view on condominium ownership; "A condominium complex may be divided vertically and horizontally and freely conveyed." *Id.* The Court's new test states that "a unit which is both susceptible to division by perpendicular lines, horizontal lines, or both, and lawfully conveyable as an independent parcel under existing law should be the criteria for the divisibility." *Id.* at 193. The Court then applied the new test and found that although the duplex was susceptible to division it was not lawfully saleable because of existing zoning laws. The court therefore held that the entire duplex building was entitled to homestead status. *Id.* In *In re Makarewicz,* 126 B.R. 127 (Bank.

S.D.Fla.1991), Judge Cristol confirmed the reasoning in *Kuver.* *Id.* at 129.

A little more than two weeks after *Kuver* was decided, Judge Paskay followed the *Rodriguez* reasoning in *In re Aliotta,* 68 B.R. 281 (Bank.M.D.Fla.1986). In *Aliotta,* the debtors resided in one of four units of an apartment building they owned. The court held that the trustee could sell the other three units even though they were attached to the debtors' residence. The court stated "that the mere fact that the claimant occupies part of the property as a residence is not enough to entitle him to an exemption for the whole." *Id.* at 282. In this opinion the Court took a facts and circumstances approach to determine whether the rental property attached or located on the same tract as the residence could be subject to homestead exemption.

■ In the present matter, the garage apartment should be given homestead status. This Court adopts the "Facts and Circumstances" analysis of *Rodriguez, Aliotta, Cowdery, McEwen,* and *Glunt,* and finds that the garage apartment was built on homestead property for utility purposes and not rental purposes. The Court holds that hard and fast tests for determining homestead exemptions proposed by other Courts do not take into account the unique factual circumstances which necessarily arise in every homestead claim. This determination however will have little impact in this case given the Court rulings on the remaining issues. Thus, the garage apartment falls within the ambit of the homestead exemption.

### 3.) DESIGNATION OF THE HALF ACRE

■ The next and most important issue before the court is the designation by the debtors of .50 acres in the configuration set forth in exhibit "A" as their homestead. The objectors assert that the debtors cannot select the shape of the half acre in such a way as to effectively prevent the division of the residence or to eliminate all access of the remaining nonexempt .55 acres. In response, the debtors cite *Frase v. Branch,* 362 So.2d 317 (Fla.C.A.1978) where the

court stated, "generally, the landowner has a right to select his homestead in any contiguous shape from his qualifying lands." *Id.* at 320. Based on this single sentence, the debtors' cavalierly argue that they have an unlimited right to designate any .50 acres of any municipal tract without any regard for their creditors' rights or claims.

In considering these two radically different legal positions it is critical for this Court to analyze the background and statutory purpose of Florida's homestead exemption.

Courts have uniformly held that the purpose of Florida's homestead exemption law is to protect debtors and their dependents from destitution, even in the face of valid creditors' claims. *Brown v. Lewis,* 520 F.Supp. 1114 (M.D.Fla.1981); *Matter of Hersch,* 23 B.R. 42 (Bankr.M.D.Fla.1982); *Frase v. Branch,* 362 So.2d 317 (Fla.C.A. 1978). Further the laws governing the exemption provisions have been liberally construed to achieve these purposes. *Frase v. Branch,* 362 So.2d at 320. However Courts are also uniform in holding that Florida's generous homestead exemption law should not become "instruments of fraud" *Frase v. Branch,* 362 So.2d at 317, to deprive creditors of funds to which they were entitled. *Brown v. Lewis,* 520 F.Supp. at 1114. Here this Court has found that the debtors have acted in bad faith and with the clear intent to defraud his creditors by their conduct concerning the pleading of their homestead exemption.

Here the debtors originally claimed that the entire tract of land on which their residence was located was exempt. Had no timely objection to the original claim of an exemption been filed, the exemption would have been allowed, even though there was no legal basis for the exemption. *Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). The debtors later "clarified" this claim to state that their residence was located on a tract only .07 acres more that the .50 acres allowed as a homestead exemption under Florida Law. It was only in March of 1991, approximate-

ly 6 months after their bankruptcy was filed, that the debtors truthfully and accurately revealed to the Court the true size of the tract of land on which their residence was located.

After this slow process of disclosure of the actual size of the tract of land on which their homestead was located the debtors adopted a new tactic to prevent any portion of the residence to be made available for their creditors' claims. On March 28, 1991 the debtors filed their second amendment to their exemptions which claimed to designate their exempt portion of the tract where their residence was located. The exempt tract was configured in such a shape as to legally and practically eliminate any reasonable value from the non-exempt tract (see attached Exhibit A). Drawing on the old saying paraphrased at the beginning of this opinion, the debtors have by their designation of the exempt portion of their residence have not protected their castle with the moat of their homestead exemption but are instead attempting to illegally deprive their creditors of the value of the non-exempt tract by constructing siege lines around it. Florida's homestead law, while generous, does not permit the designation of a homestead on a larger tract of land when that designation will render the nonexempt portion valueless or eliminate any reasonable access to the non-exempt property.

The statement in *Frase* that the debtors rely on in this case is clearly dicta, as the shape of the tract chosen by the debtor was not the main issue before the Court. Further, *Frase* did not indicate that a debtors right of designation was unlimited. This Court chooses to follow the reasoning of the Florida Supreme Court in *Shone v. Bellmore*, 75 Fla. 515, 78 So. 605 (1918) concerning a debtor's right to shape an exempt homestead. The Bellmore Court stated:

> There is no expression from this court to be found in its opinions that the tract of land constituting a homestead shall be in any particular shape, nor ... that they shall be contiguous or adjacent ... for their full length. It may be that in a

case where a man resides with his family upon a very large farm, and is called upon to select his homestead ... he would be restrained by a rule requiring reasonable exercise of the right from selecting his homestead in narrow strips of land to running through the entire tract in fanciful, queer, whimsical contortions, making a grotesque figure ...

*Id.* at 78 So. 608. Here, the selection by the debtors is not a reasonable exercise of their homestead rights as the shape chosen prevents all access, other than by helicopter, to the remaining parcel. Therefore, the designation as it stands now is improper.

### 4.) CAN ANY SPECIFIC .50 ACRE BE DESIGNATED AS THE DEBTORS HOMESTEAD?

The final issue is even if a designation of the .50 acres were to be done in a manner to allow access to roads, utilities and other property, would such a designation be permitted where, as the parties agreed, local laws would render a non-exempt tract to be untransferable and therefore effectively allow the debtors to keep property in excess of that allowed by the Florida Constitution. Section 222.02 of the Florida Statutes suggests that once a landowner designates a portion of their property as homestead the "remainder only shall be subject to sale." Fla.Stat.Ann. § 222.02 (1989). The statutory process is more complicated in this case because the existing zoning laws of the city of Winter Park prevent the subdivision of the property. Thus, the value of the .55 acres non-exempt tract is at best insignificant, since it can't be transferred without an unlikely and possibly illegal variance.

In essence, the final issue before this Court is whether debtors may keep a tract of land in excess of the half acre provided by the Florida Constitution because the zoning laws of a municipality prevent the subdivision and sale of the non-exempt portion of debtors' lands. This Court holds that they may not. The Florida Constitution allows a homestead exemption "to the extent of one-half acre of contiguous property." FLA. CONST. art. X § 4. This

area limitation is the inexorable command of the Constitution.

There is a vast difference between the half acre limit and the more flexible limitation that the exemption extends only to the residence of the owner. If the residence limitation were read strictly, landowners would not be entitled to a half acre exemption unless their residence itself was a half acre. Also, no rental land would be exempt no matter how insignificant or indivisible it is from the residence. A strict construction of that limitation has never been applied by the courts of this state. *See Edward Leasing Corp. v. Uhliq,* 652 F.Supp. 1409, 1416–1417 (S.D.Fla.1987).

In contrast, the half acre limitation must be enforced more stringently. Neither the objectors nor the debtors have cited any case and this Court has not found any case where a Florida court refused to enforce the half acre limitation. The debtors' claim that *In re Kuver,* 70 B.R. 190 (Bank. S.D.Fla.1986) and *In re Makarewicz,* 126 B.R. 127 (Bank.S.D.Fla.1991) support this proposition misstate the holdings in these cases.

If the land at issue here were *not* within a municipality this Court would apply the process given in the Florida Statutes. *See* Fla.Stat.Ann. § 222.03 (1989). This method allows the owner to designate the exempt property up to the 160 acres permitted by the Florida Constitution. FLA. CONST. art. X § 4. The remaining portion of the owner's land can then be set apart and sold to satisfy the creditors. Fla.Stat.Ann. § 222.03 (1989); *see, Frase v. Branch,* 362 So.2d 317. However, lands outside municipalities are seldom subject to strict zoning laws that prohibit the subdivision and sale of parcels, although the use of rural lands is often severely restricted by environmental laws. In a Vermont case, *In re Evans,* 51 B.R. 47 (Bank.D.Vt.1985), the Court was faced with a similar issue where environmental laws prevented the division of a parcel of land only partially exempt. Nevertheless, the court held that the trustee should sell the entire parcel and allocate the proceeds to the debtors in the amount allowed under Vermont law. *Id.* at 51.

The Evans court stated that "subdivision is not crucial to the protection of the homestead exemption of the debtor." *Id.* The Vermont homestead exemption did not limit the area of the homestead but instead limited the value of the homestead to $30,000. *Id.* at 50.

The *Evans* court determined that if it did not sanction the sale of the *entire parcel,* the debtor would have retained a homestead in excess of the express dollar limitation. Likewise, in the instant case the debtors would retain a homestead in excess of the express size limitation in the Florida Constitution, unless the tract upon which the residence is located were sold and some equitable allocation of the proceeds is made.

Similarly, in *Title Insurance Co. of Minnesota v. Agora Leases, Inc.,* 320 N.W.2d 884 (Minn.1982), the Court was faced with a debtor whose residence was located on .77 acres of urban land she owned. A judgment lien was imposed upon this land and a suit was instituted to remove this cloud on the title. *Id.* The Minnesota Homestead law provided that if the property claimed is within a city "its area shall not exceed on half of an acre." Minn.Stat. § 510.02 (1980). The land in excess of the half acre was not saleable or usable as an independent parcel because city ordinances prevented building on such a small lot and because the lot would not have a separate access. *Id.* The debtors, therefore, asserted that because the excess was essentially valueless property they should be entitled to keep it. The Minnesota Supreme Court rejected this assertion because the statute spoke in terms of area not value, so the value of the excess parcel was irrelevant. *Id.* at 885. The Court stated that the parcel was hardly de minimis in that it was half as much acreage as allowed under the Minnesota exemption. Thus, the lien could not be removed as a cloud on the title to the land. *Id.*

Like the excess parcel in *Agora Leases,* the .55 acres of the tract containing the debtors' residence cannot be retained by the debtors as homestead under the acreage limitations of Florida Law. Further

the exempt tract is not independently saleable and thus has minimal value in its own right. Under the *Agora Leases* analysis, this Court rejects any attempt by the debtor to retain possession of the .55 acres free of the estate's interest in non-exempt assets. Although the *Agora Leases* Court did not have to order the sale of the entire tract, as it had already been sold, such a sale was done in another Minnesota case, *O'Brien v. Heggen,* 705 F.2d 1001 (8th Cir. 1983).

In *O'Brien,* a debtor owned a lakeshore lot of approximately 40,000 square feet containing his residence. The Bankruptcy Court ordered the sale of the entire lot and that the proceeds be allocated as either exempt or non-exempt funds. The debtor then made a hypothetical selection of a portion of the previously sold lot as exempt. *Id.* at 1002. Under this selection the non-designated portion would not have had access to a public road and would have been improper under the city ordinance because it would have been too small. The Minnesota District Court affirmed the Bankruptcy Court's allocation of the sale proceeds. *Id.* The Eighth Circuit Court of Appeals, in affirming the District Court, stated that the Bankruptcy Court's apportionment "allows an appropriate recognition of debtor's homestead exemption and yet affords creditors some satisfaction of their rightful claims." *Id.* at 1004. The court commented that creditors benefited "because there would have been no reasonable or feasible way of dividing the property and giving the non-exempt part any value: minimum lot size requirements, irregular topography, and problems of accessibility would have rendered any physical division of the property impractical." *Id.*

This Court is persuaded that the *O'Brien* reasoning should control the instant case. The property cannot be practically or legally divided and a sale of the entire parcel with an accompanying apportionment of the proceeds is an "eminently fair resolution." *Id.* Through such a sale the debtors will receive the value of their homestead land, which will retain its exempt status under the doctrine of *Orange Bre-*

*vard Plumbing & Heating Co. v. La Croix,* 137 So.2d 201 (Fla.1962). The debtors can then repurchase a homestead or bid in their exemption at the sale thereby fulfilling the purpose of the Florida homestead exemption law by providing shelter for debtors and their family. *Id.* at 204. The creditors will benefit as the Trustee will recover the proceeds of the nonexempt tract for distribution.

These debtors argue that the literal language of the Florida Constitution prohibits sales not listed in article X of the Constitution. FLA. CONST. art. X § 4. However, such a strict construction has not been applied by the courts. The Florida Supreme Court has allowed judicial sales of homesteads where there exists an equitable mortgage or when a sale is necessary to protect a co-owner's beneficial interest in the homestead. *See, Sonneman v. Tuszynski,* 139 Fla. 824, 191 So. 18 (1939); *Tullis v. Tullis,* 360 So.2d 375 (Fla.1978). Here the Bankruptcy trustee's interest in the residence is similar to that of a co-owner given that the property can't be partitioned and the trustee has an ownership interest in the non-exempt portion. Further in the instant case a judicial sale is necessary to enforce the homestead limitation of the Florida Constitution itself. The homestead exemption cannot be used, even in conjunction with zoning laws, to unjustly impose upon the rights of creditors. *See, Hillsborough Inv. Co. v. Wilcox,* 152 Fla. 889, 13 So.2d 448 (1943).

## VALUATION

The parties have not asked this court to value the exemption and therefore, this Court makes no determination as to the value of the exempt and non-exempt portions of the property. Further this Court expressly reserves ruling as to the proper manner of allocating any subsequent proceeds from any sale of the residence. The Court gives the parties until October 20, 1992, to file with this Court an agreement and related pleadings concerning the allocation of sale proceeds. If no agreement is filed the parties are directed to file simultaneous briefs on the issue of allocation on or

before October 30, 1992. A hearing on the issue of allocation if necessary, will be set on the November 16, 1992.

■ In the present action the debtors have, at every turn attempted to limit the amount of assets available for distribution to their creditors by first misidentifying the size of their homestead and later partitioning the tract containing his residence in such a manner as to render the nonexempt portion of that tract valueless. These actions are not the actions of an honest debtor merely availing himself of the liberal homestead exemption laws of the State of Florida but rather the actions of a greedy individual who wishes to obtain an unconscionable windfall by turning a homestead exemption, enacted to prevent the impoverishment of families, into an instrument of fraud with which he can improperly deprive his creditors of an asset with a value of at least several hundred thousand dollars, based on the debtors own valuation.

The misleading and fraudulent actions discussed above could have resulted in a total denial of the debtors right to claim a homestead exemption in his residence. *See* generally, *Hardage v. Herring Nat. Bank,* 837 F.2d 1319 (5th Cir.1988); *In re Williamson,* 804 F.2d 1355 (5th Cir.1986); *In re Doan,* 672 F.2d 831 (11th Cir.1982). However since the issues in this case had not been directly addressed by a Court construing Florida law before today and one court, in dicta, indicated that a debtor had great leeway in selecting the shape of his homestead, this Court believes that total elimination of his homestead is too severe a punishment and holds that these debtors should be allowed to claim a fair share of the proceeds from the sale of their residence. As noted by the Bankruptcy Court in *In re Zouhar,* 10 B.R. 154 (Bank. D.N.M.1981) "there is a principle of too much; phrased colloquially, when a pig becomes a hog it is slaughtered". *Id.* at 157. Here the Court shall not "slaughter" the debtors but shall instead deny their improperly claimed homestead exemption and grant the debtors leave to file *one final amendment* to their homestead exemption setting forth their claim. The choice of being pigs or hogs is left to the debtors and their counsel.

DONE and ORDERED.