697 So.2d 821 (1997)
Thomas S. TRAMEL, III, as Sheriff of Columbia County, Petitioner,
v.
Charles STEWART, Jr., and Beverly J. Stewart, Respondents.
No. 89032.
Supreme Court of Florida.
June 19, 1997.
Rod Bowdoin and Teresa Byrd Morgan of Darby, Peele, Bowdoin & Payne, Lake City, for petitioner.
Stephen N. Bernstein of the Law Office of Stephen N. Bernstein, P.A., Gainesville, for respondents.
Robert A. Butterworth, Attorney General and Jacqueline H. Dowd, Asst. Atty. Gen., Orlando, for amicus curiae State of Florida.
Robert S. Griscti of Turner & Griscti, P.A., Gainesville, for amicus curiae Florida Ass'n of Criminal Defense Lawyers.
Arthur I. Jacobs, Fernandina Beach, for amicus curiae Florida Prosecuting Attys. Ass'n.
Harold M. Robbins, Jr., Executive Director, Tallahassee, for amicus curiae Florida Police Chiefs Ass'n.
PER CURIAM.
We have for review Stewart v. Tramel, 695 So.2d 729 (Fla. 1st DCA 1996), in which the district court certified the following question to be of great public importance:
WHETHER ARTICLE X, SECTION 4, FLA. CONST., PROHIBITS CIVIL FORFEITURE OF HOMESTEAD PROPERTY PURSUANT TO SECTIONS 932.701.702, FLA.STAT., WHEN THE PROCEEDS OF ILLEGAL ACTIVITY ARE INVESTED IN OR USED TO PURCHASE THE PROPERTY?
Stewart, at 731.[1] We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. For the reasons we express in this opinion, we answer the certified question in the affirmative and approve the district court's decision, which reversed the trial court's judgment that the Stewart's homestead property was forfeitable.
*822 Through the use of a confidential informant, police discovered that the Stewarts were selling marijuana. Police thereafter arrested the Stewarts and procured a search warrant for their property. This search revealed drugs and drug-related paraphernalia in the Stewart's house[2] and a sophisticated marijuana-growing operation in a barn adjacent to the house.[3]
Based on these findings, forfeiture proceedings were initiated against the Stewarts' real and personal property which was either used as an instrumentality or acquired by proceeds obtained as a result of a violation of the Florida Contraband Forfeiture Act (Forfeiture Act).[4]See §§ 932.701.707, Fla.Stat. (1993). Throughout the proceedings, the Stewarts claimed that the real property, which was purchased in 1985, was homestead property and was not properly forfeitable. Specifically, at trial the Stewarts argued that under this Court's opinion in Butterworth v. Caggiano, 605 So.2d 56 (Fla.1992), homestead property is protected against forfeiture except in the circumstances enumerated in article X, section 4 of the Florida Constitution. The trial court agreed that the property was homestead at the time of seizure. However, the trial court found that footnote 5 of Caggiano narrowed the scope of the decision to cases in which the homestead was used as an instrumentality of criminal activity and did not address cases in which the homestead was acquired, built, or improved with illicit proceeds. At the close of the evidence, the jury was instructed consistent with this ruling.[5] The jury ultimately determined that numerous items of personal property were forfeitable and that one hundred percent of the Stewarts' real property[6] was acquired, built, or improved upon with money or proceeds obtained in violation of the Forfeiture Act. A final judgment was entered forfeiting all of this property, including the homestead.
On appeal, the First District reversed the trial court's ruling on the homestead forfeiture issue, holding that since it was conceded for purposes of appeal that the real property in question was homestead, Caggiano precluded the forfeiture of the property. Stewart. The district court concluded that for two reasons footnote 5 did not require a different result. First, the district court concluded that this case did not fall within any of the exceptions announced in the footnote. Id. at 730-31. Second, the district court found a distinction between this case and the cases cited in the footnote in which equitable liens were imposed on the property on behalf of the person or entity against whom the fraud was perpetrated. Id. Additionally, the district court found no significant distinction in terms of public policy between cases involving the use of homestead property and those involving proceeds derived from criminal activity. Id. The district court then certified the foregoing question. Id.
Resolution of this question requires us to construe the homestead guarantee of the Florida Constitution and the Forfeiture Act. Article X, section 4 of the Florida Constitution provides in relevant part:
(a) There shall be exempt from forced sale under process of any court, and no judgment, decree, or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field, or other labor performed on the realty, the following property owned by a natural person:
(1) a homestead....
*823 The Forfeiture Act did not contain a provision for the forfeiture of real property until October 1, 1989. § 932.701, Fla.Stat. (1987). Of relevance here, section 932.701(2)(f), Florida Statutes (1989), was amended effective October 1, 1989, see ch. 89-148, §§ 1-4, Laws of Fla., to include the following definition of "contraband article" in the Forfeiture Act:
(f) Any real property or any interest in real property which has been or is being employed as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony, or which is acquired by proceeds obtained as a result of a violation of the Florida Contraband Forfeiture Act.

(Emphasis added.)[7] Further, the amendments made it unlawful to acquire real property by the use of proceeds obtained in violation of the Forfeiture Act, § 932.702, Fla. Stat. (1989), and any such real property was subject to forfeiture. § 932.703, Fla.Stat. (1989).
While we have not addressed the forfeiture of homestead property under the Forfeiture Act, we have held that article X, section 4 of the Florida Constitution prohibits civil or criminal forfeiture of homestead property used in the course of racketeering activity in violation of Florida's Racketeer Influenced and Corrupt Act (Florida RICO Act). See Caggiano. In Caggiano, the State sought forfeiture of the defendant's house based upon a finding that the defendant used the house in violation of the Florida RICO Act.[8] We noted that Florida courts have consistently held that the homestead exemption in article X, section 4, must be liberally construed. Caggiano, 605 So.2d at 58. We then determined that the plain language of the constitutional provision included protection from forced sales. Id. at 60. We reasoned that since the three exceptions enumerated in this provision[9] did not include forfeiture or an exception for criminal activity, forfeiture of the homestead under the circumstances of the case was not proper. Id.
In Caggiano we addressed a similar contention to the one made by the sheriff here that because this Court has imposed equitable liens on homesteads in cases involving fraud or reprehensible conduct, this Court should not allow the homestead protection to shield property where there is a pattern of criminal activity involved. In rejecting this argument, we stated:
All of the cases cited by the State where a court has actually imposed a lien on the homestead in question, however, are either factually or legally inapposite. Virtually all of the relevant cases involve situations that fell within one of the three stated exceptions to the homestead provision. Most of the cases involve equitable liens that were imposed where proceeds from fraud or reprehensible conduct were used to invest in, purchase, or improve the homestead. See, e.g., Jones v. Carpenter, 90 Fla. 407, 415, 106 So. 127, 130 (1925); La Mar [v. Lechlider], 135 Fla. 703, 711, 185 So. 833, 836 [Fla. 1939]....
The factual situations involved in the cited cases are not present here. It is undisputed that no illicit proceeds were used to purchase, acquire, or improve Caggiano's property.
Caggiano, 605 So.2d at 60-61 n. 5. In its analysis, the district court read this part of our decision to limit equitable liens based upon "fraud or reprehensible conduct" to instances in which funds were acquired from a specific person or entity and an equitable lien imposed on the property on behalf of the person or entity against whom the fraud was perpetrated. Stewart, 695 So.2d at 730-31.
*824 Although this Court has permitted equitable liens to be imposed beyond the literal language of the constitutional homestead guarantee, see Palm Beach Sav. & Loan Ass'n v. Fishbein, 619 So.2d 267, 270 (Fla.1993), we agree with the district court's determination that the State does not have a right to the forfeiture of a homestead on the basis of an equitable lien under the circumstances of this case. Stewart, 695 So.2d at 730-31 Based upon article X, section 4 of the Florida Constitution, we do not find that a forfeiture of a homestead can currently be predicated on the Forfeiture Act.
As noted above, the homestead guarantee in the constitution must be liberally construed. Caggiano. It therefore follows that before the Forfeiture Act can provide a basis for the forfeiture of homestead property, a liberal construction of the homestead guarantee in the Constitution must permit a forfeiture for a violation of the Forfeiture Act. We discussed the due process requirements of the Forfeiture Act in Department of Law Enforcement v. Real Property, 588 So.2d 957 (Fla.1991), and we recognized the reason that forfeiture of homes requires special considerations:
Property rights are among the basic substantive rights expressly protected by the Florida Constitution. Art. I, § 2, Fla. Const.; see Shriners Hosps. for Crippled Children v. Zrillic, 563 So.2d 64, 68 (Fla. 1990) (article I, section 2 protects all incidents of property ownership from infringement by the state unless regulations are reasonably necessary to secure the health, safety, good order, and general welfare of the public). Those property rights are particularly sensitive where residential property is at stake, because individuals unquestionably have constitutional privacy rights to be free from governmental intrusions in the sanctity of their homes and the maintenance of their personal lives. Art. I, §§ 2, 12, 23, Fla. Const.
Real Property, 588 So.2d at 964. Our express reliance upon article I, sections 2 ("Basic rights"), 12 ("Searches and seizures"), and 23 ("Right of privacy"), provides additional support for the constitutional homestead guarantee in article X, section 4.
As we found in respect to the Florida RICO Act in Caggiano, we find that article X, section 4, does not provide an exception for the forfeiture of homestead property for a violation of the Forfeiture Act. The homestead guarantee uses broad language protecting the homestead from involuntary divestiture by the courts. Caggiano, 605 So.2d at 59. The constitutional protection of homesteads has not changed since our decision in Caggiano to include forfeiture as one of the enumerated exceptions. In the absence of such a provision, this court cannot judicially create one. Id. at 60-61.
Certainly, there are compelling reasons to support the forfeiture of homestead property "acquired or improved" with funds obtained through felonious criminal activity or homestead property used in the commission of felonious criminal activity. As well, the homestead protection should not be used to shield fraud or reprehensible conduct. See Jones v. Carpenter, 90 Fla. 407, 106 So. 127 (1925). However, to permit the State to forfeit a homestead based upon this criminal activity in Florida requires a constitutional revision.[10] We call this to the attention of the Constitutional Revision Commission.
Accordingly, we answer the certified question in the affirmative. For the reasons stated herein, we approve the decision of the district court reversing the judgment of the trial court with respect to the forfeiture of the homestead property and remand for proceedings consistent with this opinion.[11]
It is so ordered.
*825 KOGAN, C.J., and OVERTON, SHAW, GRIMES and HARDING, JJ., concur.
WELLS, J., concurs with an opinion.
ANSTEAD, J., dissents with an opinion.
WELLS, Judge, concurring.
It is tempting to join in the dissent because allowing homestead exemption to shield proceeds from felonious activities is abhorrent to me. However, I cannot do so since the dissent does not set forth how the Forfeiture Act can be responsibly interpreted to provide procedures which could except out property acquired with proceeds from felonious activities from the constitutional provision. At the very least, there would have to be some answer to the questions raised in footnote 10 of the majority opinion. I have diligently tried, but I cannot develop such an interpretation. Thus, I am forced to agree with the majority that, until there is a constitutional and legislative revision, the majority's decision is the correct and responsible one.
ANSTEAD, Judge, dissenting.
Consistent with the exceptions we have already recognized and that are noted in the majority opinion, I would hold that Florida's constitutional homestead protection was neither intended nor has the effect of shielding the forfeiture of property when it can be established that the property was acquired in whole with proceeds from a criminal enterprise. Cf. In re of Parcel of Real Property Known as 1632 N. Santa Rita, 166 Ariz. 197, 801 P.2d 432, 437 (App.1990) (affirming civil forfeiture of property used to grow marijuana, reasoning that "homestead statutes were not designed to immunize real property for use in a criminal enterprise"); People v. Allen, 767 P.2d 798, 800 (Colo.Ct.App.1988) (holding that property's adjudication as public nuisance from its use for criminal activity disqualified it for homestead exemption); Cox v. Waudby, 433 N.W.2d 716, 719 (Iowa 1988) (holding that where wrongfully obtained funds are used to purchase property, the property does not belong to purchasers and no homestead interest exists).
NOTES
[1] Although the certified question states the sections to be sections 932.701-.702, we refer in this decision to the Florida Contraband Forfeiture Act, which is sections 932.701-.707, Florida Statutes (1993).
[2] This included a large bag of marijuana and scales for weighing marijuana.
[3] In the second story of the barn, police found a watering system for the marijuana plants and an electrical system to operate the electronic controls, the grow lights, the temperature regulators, and air conditioners for the growing marijuana plants.
[4] Additionally, criminal charges were filed against the Stewarts. No issue regarding the criminal charges is presently before this Court.
[5] The jury was instructed that Florida law provides that the Stewarts' homestead interest could only be forfeited if it was purchased or acquired by illegally obtained proceeds.
[6] The property consisted of 6.38 acres, a house, a barn, and a paved driveway.
[7] This section, now section 932.701(2)(a)6, Florida Statutes (1995), provides:

Any real property, including any right, title, leasehold, or other interest in the whole of any lot or tract of land, which was used, is being used, or was attempted to be used as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony, or which is acquired by proceeds obtained as a result of a violation of the Florida Contraband Forfeiture Act.
[8] Three of the bookmaking incidents for which the defendant was convicted occurred at the defendant's house. Caggiano, 605 So.2d at 57.
[9] These three exceptions are: (1) payment of taxes and assessments thereon; (2) obligations contracted for the purchase, improvement, or repair thereof; and (3) obligations contracted for house, field, or other labor performed on the realty. Caggiano, 605 So.2d at 60.
[10] In the event of a constitutional revision including an exception to the homestead guarantee for forfeiture pursuant to the Forfeiture Act, the legislature would need to address with particularity forfeiture of homesteads. For example, is there a threshold percentage of the amount used to purchase a homestead which would allow a forfeiture? Does it have to be one hundred percent, more or less than fifty percent, or could one percent be the basis for forfeiture? Is there any limitation on the time between the obtaining of the proceeds in violation of the Forfeiture Act and the acquisition of the property?
[11] In its opinion, the district court noted that in light of its resolution of the homestead issue, it did not reach the other issues raised on appeal. Our remand is to allow the district court to address any issue not rendered moot by our opinion herein.