**In re William H. TABONE, Sr., Debtor.**

**Bankruptcy No. 99–8777–3P3.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 18, 2000.

Marsha Brown, for trustee.

D. Lamar Smith, Jacksonville, FL, for debtor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Chief Judge.

This case came before the Court upon the objection of Mamie L. Davis, Chapter 13 Trustee ("Trustee") to property claimed as exempt by William H. Tabone, Sr. ("Debtor"). (Doc. 14.) On March 2, 2000 the Court held a hearing and requested written submissions in lieu of closing oral argument. (Doc. 19.) Upon review of the evidence presented and the submissions of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

1. From 1983 to 1999 Debtor's principal residence was located in Port St. Lucie, Florida. Debtor owned the property free of liens and encumbrances with his non-debtor spouse.

2. On or about March 7, 1999 Debtor sold his Port St. Lucie residence and realized net proceeds in the amount of $102,638.90.

3. In May 1999 Debtor and his spouse contracted to purchase a new residence in Jacksonville, Florida. Debtor closed on the purchase of the Jacksonville property on October 29, 1999. The total purchase price was $120,886.40.

4. Debtor concedes that non-exempt funds from an investment brokerage account were used to make up the difference between the sale price of his prior homestead and the purchase price of the Jacksonville residence. The difference between the sale price of the initial residence and the purchase price of the Jacksonville home is $18,247.50. Debtor testified that at least $17,000 of this difference was made up from funds contained in a non-exempt brokerage account. (March 2, 2000 H'rg.) Trustee concedes that the proceeds from the sale of Port St. Lucie home used to purchase the Jacksonville residence are exempt under Florida law.

5. In October 1999, prior to closing on the Jacksonville home, Debtor sought debt counseling and legal advice concerning the possibility of seeking bankruptcy protection.

6. Debtor testified that he did not recall whether he discussed the purchase of the Jacksonville home with his attorney. (March 2, 2000 H'rg.)

7. On October 29, 1999 Debtor closed the purchase of the Jacksonville home, paying cash for the entire purchase price.

8. On November 16, 1999, approximately twenty days after the closing, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.

9. The bankruptcy schedules filed with the petition list no secured creditors and over $76,000 in unsecured credit card debt. (Doc. 2.) Debtor proposes to pay slightly over $8,700 to unsecured creditors through his Chapter 13 plan. (Doc. 11.)

10. At the time of the hearing on Trustee's objection, the claims register listed a secured claim for $30,000 and unsecured debts exceeding $112,000.

11. Initially, Debtor failed to list his interest in a Commonwealth of Virginia Annuity, a Salomon Smith Barney I.R.A. and an A.G. Edwards & Sons, Inc. investment account. Debtor also failed to list his non-debtor spouse's social security income as part of the household income on Schedule I and the lease payment for his 1998 Buick LeSabre as part of his monthly expenses on Schedule J. Debtor amended his schedules to reflect his interests in the Commonwealth of Virginia Annuity, the Salomon Smith Barney I.R.A. and the A.G. Edwards & Sons, Inc. investment account. (Docs. 15–16.) However, no amendments have been made to Schedules I or J to

reflect the discrepancies as to Debtor's household income and monthly expenses.

12. The non-exempt funds used to complete the purchase the Jacksonville residence originated from the A.G. Edwards & Sons, Inc. investment account.

### CONCLUSIONS OF LAW

Trustee asserts that Debtor converted non-exempt funds from an investment account to an exempt homestead property in order to hinder, delay and defraud his creditors. Trustee contends Debtor must turn over to the estate the difference between the purchase price of the Jacksonville home and the sale price of the Port St. Lucie residence. Debtor maintains that the entire value of the Jacksonville residence is exempt, notwithstanding the fact that non-exempt assets were used for its purchase. Debtor contends that even a homestead acquired in fraud of creditors is exempt because there is no fraud exception to the homestead exemption in the Florida Constitution.

The issue before the Court is whether the fraudulent conversion of non-exempt assets into an exempt homestead precludes the homestead exemption in the amount of the conversion; and if so, whether Debtor's actions were done with the intent to hinder, delay or defraud his creditors.

### I. Homestead as an Instrument of Fraud

The Court has made clear that while the homestead exemption must be liberally construed, it may not be used as an instrument of fraud. *See In re Brown,* 165 B.R. 512, 514 (Bankr.M.D.Fla.1994) (citing *Hillsborough Inv. Co. v. Wilcox,* 152 Fla. 889, 891, 13 So.2d 448 (Fla.1943) (en banc) (noting homestead exemptions "should at no time be interpreted so as to make them instruments of fraud …")); *Teasdale v. Frederick (In re Frederick),* 183 B.R. 968, 970–71 (Bankr.M.D.Fla. 1995). Accordingly, the Court has determined that a homestead exemption will be disallowed when a debtor converts non-exempt assets into the homestead with the

intent to hinder, delay or defraud creditors. *See In re Wilbur,* 206 B.R. 1002, 1008 (Bankr.M.D.Fla.1997). Several bankruptcy courts have reached similar conclusions when interpreting the Florida homestead exemption. *See In re Mesa,* 232 B.R. 508, 510 (Bankr.S.D.Fla.1999) (imposing equitable lien on homestead); *In re Kravitz,* 225 B.R. 515, 517 (Bankr.D.Mass. 1998) (holding exemption disallowed to extent homestead acquired in fraud of creditors); *In re Bandkau,* 187 B.R. 373, 381 (Bankr.M.D.Fla.1995) (same); *In re Thomas,* 172 B.R. 673, 674 (Bankr.M.D.Fla.1994) (same); *In re Coplan,* 156 B.R. 88, 90 (Bankr.M.D.Fla.1993) (same); *Fidelity Serv. Co. v. Grocki (In re Grocki),* 147 B.R. 274, 278 (Bankr.S.D.Fla.1992) (imposing equitable lien on homestead); *In re Gherman,* 101 B.R. 369, 370 (Bankr. S.D.Fla.1989) (sustaining objection to homestead exemption where debtor used fraudulently converted funds to purchase property).

However, the Court recognizes that the current trend of case law in Florida is to permit bankruptcy debtors to exempt their homestead even when fraudulently acquired with non-exempt assets. *See generally* Jules S. Cohen, *The Use of the Florida Homestead to Defraud Creditors,* 72–Dec Fla.B.J. 35 (1998) (concluding that a homestead acquired in fraud of creditors is exempt because there is no fraud exception in the Florida Constitution). *See also In re Hendricks,* 237 B.R. 821, 825 (Bankr. M.D.Fla.1999) (allowing homestead exemption); *In re Young,* 235 B.R. 666, 671 (Bankr.M.D.Fla.1999) (finding no fraud exception to homestead exemption in Florida Constitution); *In re Lazin,* 221 B.R. 982, 988 (Bankr.M.D.Fla.1998) (finding conversion of nonexempt assets into homestead with the intent to hinder, delay, or defraud creditors is not exception to homestead exemption); *In re Lee,* 223 B.R. 594, 596 (Bankr.M.D.Fla.1998) (finding debtor's intent to defraud creditors did not constitute basis for disallowing Florida homestead exemption); *Barbee v. Statner (In re Stat-*

ner), 212 B.R. 164, 166 (Bankr.S.D.Fla. 1997) (allowing homestead exemption); *In re Clements,* 194 B.R. 923, 925 (Bankr. M.D.Fla.1996) (same); *Bank Leumi Trust Co. of N.Y. v. Lang,* 898 F.Supp. 883, 887 (S.D.Fla.1995) (same); *Meininger v. Miller (In re Miller),* 188 B.R. 302, 304–05 (Bankr.M.D.Fla.1995) (upholding homestead exemption even though its purchase was a fraudulent transfer as to the creditors); *In re Popek,* 188 B.R. 701, 703 (Bankr.S.D.Fla.1995) (same); *Ezrol v. Lane (In re Lane),* 190 B.R. 125, 127 (Bankr.S.D.Fla.1995) (allowing homestead exemption).

Most courts which have found no fraud exception to the Florida homestead exemption have relied on *Butterworth v. Caggiano,* 605 So.2d 56, 58 (Fla.1992), *Tramel v. Stewart,* 697 So.2d 821, 823 (Fla.1997), and the absence of a fraud exception in the Florida Constitution.[1] In *Caggiano* and *Tramel,* the Florida Supreme Court held that the state could not obtain forfeiture of a homestead acquired with the proceeds of criminal activity because there is no such exception in the Florida Constitution. *See* 605 So.2d at 59, 697 So.2d at 825. However, the case at bar involves the judicially created fraudulent conversion doctrine,[2] not a state enacted forfeiture statute as present in *Caggiano* and *Tramel.* And, the Florida Supreme Court has already engrafted an exception to the homestead provision in the Florida Constitution in order to prevent unjust enrichment. *See*

*Palm Beach Sav. & Loan Ass'n v. Fishbein,* 619 So.2d 267, 270 (Fla.1993) (imposing equitable lien on homestead beyond literal language of article X, § 4). *See also Jones v. Carpenter,* 90 Fla. 407, 408, 106 So. 127 (1925) (imposing equitable lien in favor of victim of embezzlement in amount of embezzled funds used to improve property). Therefore, the Court is unimpressed by the absence of an exception for fraudulent conversion in the Florida Constitution.

Nonetheless, the Florida Supreme Court has never directly addressed whether the Florida homestead exemption applies when a debtor uses non-exempt assets to purchase a homestead with the intent to hinder, delay or defraud his creditors. The Court recognizes that "this is a significant question of Florida law with respect to which Florida precedent is not clear." *Key Bank of Me. v. Jost (In re Jost),* 136 F.3d 1455, 1458–59 (11th Cir.1998). The Court also recognizes that the Eleventh Circuit has recently certified this very issue to the Florida Supreme Court. *See Havoco of Am., Ltd. v. Hill,* 197 F.3d 1135, 1143–44 (11th Cir.1999).

It is difficult to imagine the Florida Supreme Court approving a homestead claim on a record of fraud when nonexempt proceeds are used to purchase the property. This is particularly so in light of the fact that the court has previously im-

---

**1.** Article X, § 4(a) of the Florida Constitution provides for an unlimited exemption as follows:

Homesteads—exemptions (a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessments thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person: (1) a homestead....

Fla. Const. art. X, § 4(a)(1).

**2.** Courts are split regarding the impact of Florida Statutes §§ 222.29 and 222.30. *See* Fla.Stat.Ann. §§ 222.29 and 222.30 (West

1999). In 1993, the Florida legislature amended the Florida Code specifically to make the conversion of a non-exempt asset into an exempt asset with the intent to hinder, delay or defraud the creditors a fraudulent asset conversion. *See* Fla.Stat.Ann. § 222.30(2) (West 1999). Courts have reached contrary conclusions as to whether this statute is applicable to the homestead exemption. *Compare Hendricks,* 237 B.R. at 824–825 (finding § 222.29 inapplicable to homestead exemption because statutory laws cannot impair constitutional rights and, by its terms, it only applies to exemptions within § 222), *with Thomas,* 172 B.R. at 674 (holding that §§ 222.29 and 222.30 bar homestead exemptions resulting from fraudulent asset conversions).

posed equitable liens against the homestead in order to prevent unjust enrichment. *See Fishbein,* 619 So.2d at 270; *Jones,* 90 Fla. at 408, 106 So. 127. Therefore, the Court will not depart from its previous view on the matter absent a contrary decision by the Florida Supreme Court. Accordingly, the Court will continue to deny exemption claims covering homesteads and other property when there is a finding of fraud in the conversion. *See Wilbur,* 206 B.R. at 1008; *In re Mackey,* 158 B.R. 509, 512 (Bankr. M.D.Fla.1993); *In re Elliott,* 79 B.R. 944, 946 (Bankr.M.D.Fla.1987).

### A. Proof of Fraud

As this Court has previously noted, "[t]he conversion of non-exempt assets into exempt assets is not fraudulent per se; however, when the conversion is done with intent to defeat the interests of creditors, it may be sufficient to deny a debtor's claim of exemption." *Wilbur,* 206 B.R. at 1008 (citing *Mackey,* 158 B.R. at 512; *Elliott,* 79 B.R. at 946). Fraudulent intent may be inferred from extrinsic evidence. *See In re Schwarb,* 150 B.R. 470, 472 (Bankr.M.D.Fla.1992). Two factors particularly indicative of fraudulent intent are: (1) the timing of the conversion from non-exempt to exempt property and (2) any attempts by the debtor to conceal the conversion. *See Elliott,* 79 B.R. at 946.

In the present case, the evidence clearly shows that on October 29, 1999 Debtor finalized the purchase of the Jacksonville home with funds from a non-exempt investment account and the proceeds from the sale of his exempt homestead in Port St. Lucie. Approximately $17,000 originated from the non-exempt investment account and approximately $103,000 originated from the sale of Debtor's prior homestead property. Trustee concedes that the $103,000 is exempt homestead proceeds. *See In re McCarthy,* 13 B.R. 389, 391 (Bankr.M.D.Fla.1981) (noting that proceeds from sale of homestead are ex-

empt if debtor intends to purchase another home).

On November 16, 1999, less than twenty days after the conversion of non-exempt assets to exempt, Debtor filed a bankruptcy petition in this Court. Initially, Debtor did not list the investment account on his schedules and has not since claimed it as exempt. Further, Debtor did not disclose the Port St. Lucie address, the sale of the home, or the income derived from the sale on the schedules filed with the petition. Debtor also failed to disclose his wife's income and the payment on a leased vehicle.

Given the circumstances, including Debtor's failure to properly account for his financial affairs, and the close proximity of the bankruptcy filing with the conversion of non-exempt property to exempt, the Court finds that Debtor acted with the requisite intent to hinder, delay and defraud his creditors. Accordingly, Debtor's homestead exemption will be disallowed in the amount of $17,000, the sum impermissibly converted from nonexempt assets. The remainder of the homestead will be allowed as exempt.

### CONCLUSION

Based on the foregoing, Trustee has proven by a preponderance of the evidence that Debtor converted non-exempt funds into his homestead with intent to hinder, delay and defraud his creditors. Trustee's objection is well taken and will be sustained in the amount of $17,000. A separate order will be entered in accordance with these Findings of Fact and Conclusions of Law.