**In re Ira LAPES, Debtor.**

**European American Bank, Plaintiff,**

**v.**

**Ira Lapes, Ronit Lapes a/k/a Ronnet Lapes a/k/a Ronit Cohen, Supreme Credit Corporation and Ira Lapes Brokerage, Inc. d/b/a Roco's Insurance Agency, Defendants.**

**Bankruptcy No. 99–20868–BKC–PGH. Adversary No. 99–2173.**

United States Bankruptcy Court, S.D. Florida.

Oct. 19, 2000.

Lanin Sonn & Rheem LLP by Scott L. Lanin, New York City, Mattlin & McClo-

sky by Gordon Dieterle, Boca Raton, FL, for European American Bank.

Ira Lapes, pro se.

JAMES A. GOODMAN, Bankruptcy Judge.*

### MEMORANDUM OF DECISION [1]

A trial [2] was held on the twelve count complaint of the plaintiff, European American Bank ("EAB"), against Ira Lapes (the "Debtor"), Supreme Credit Corporation ("Supreme") and Ira Lapes Brokerage, Inc. d/b/a Roco's Insurance Agency ("Roco's Insurance").[3] Ira Lapes appeared *pro se* on his own behalf and as President of Supreme and Ira Lapes Brokerage, Inc. d/b/a Roco's Insurance Agency. EAB appeared through its counsel Scott L. Lanin, and Gordon A. Dieterle, and by its Vice President of Commercial Asset Recovery, Ellen J. Terry.

EAB's claims in this bankruptcy case arise from Supreme's 1996 default on a secured loan obligation which was personally guaranteed by Mr. Lapes. The facts of the underlying loan transaction and EAB's post-default collection efforts are undisputed and have been presented at trial by stipulation, admissions, or uncontroverted evidence. EAB sought relief in the state court (State of New York, County of New York, Index No. 601982/96) against Supreme on the underlying note and against Mr. Lapes on the guaranty. During the course of that pre-petition litigation, EAB obtained preliminary and permanent injunctive relief against Mr. Lapes and Supreme to prevent the dissipation and transfer of assets, including Supreme's accounts receivables and other collateral of EAB. In addition to the injunctive relief that prohibited the transfer of Supreme's assets, EAB obtained a judgment in the amount of $1,156,450.98 against Supreme and Mr. Lapes for sums due on the note and guaranty. In post-judgment collection efforts, EAB prevailed in its motion to have Supreme and Mr. Lapes held in contempt as follows:

ADJUDGED, that the defendants Supreme Credit Corporation, Ira Lapes Brokerage, Inc. and Ira Lapes are guilty of a contempt of court for interfering with plaintiff's attempts to recover receivables from defendants' debtors, for submitting forged and altered financial documents regarding receivables as collateral and for continuing to collect receivables in violation of the Court's order of attachment and permanent injunction, and in violation of plaintiff's rights; and it is further

ADJUDGED, that said misconduct was calculated to and did actually defeat, impair, impede, and prejudice the rights of the plaintiff herein . . .

Order dated January 13, 1997, New York Supreme Court.

Thereafter, Mr. Lapes filed for bankruptcy, giving rise to the adversary proceeding in which EAB argues, *inter alia,* that Mr. Lapes and Supreme are collaterally estopped from challenging the fraud and findings of misconduct contained in

---

\* United States Bankruptcy Judge, District of Maine Sitting by Designation

1. This memorandum sets forth findings of fact and conclusions of law in accordance with Fed.R.Civ.P. 52 and F.R.Bankr.P. 7052, made applicable by F.R.Bankr.P. 9014. Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978 ("Bankruptcy Code" or "Code"), as amended, 11 U.S.C. § 101, *et seq.*

2. EAB moved for entry of judgment as a matter of law. The Court denies the motion and enters judgment based on all the evidence. Although the defendants offered no evidence,

and Mr. Lapes was never sworn as a witness, his presentation included admissions and some purported statements of facts. The Court will give his *pro se* presentation every consideration and rule on the merits of all of the arguments and evidence presented.

3. The Debtor, Supreme Credit, and Roco's Insurance are herein referred to collectively as the Defendants. The pleadings are hereby amended to conform to the proof, including amending the reference to Roco's Insurance Agency so as to include "Ira Lapes Brokerage, Inc., d/b/a Roco's Insurance Agency."

the order entering permanent injunctive relief, the judgment, and the January 13, 1997 contempt order entered by the New York Supreme Court. The defendants do not dispute any of the findings of fact contained in these prior orders and the defendants consented to the admission of EAB's proposed stipulated facts, which stipulation incorporated the factual determinations made by the state court. Equally as important, the defendants did not object to the thousands of pages of documents offered into evidence by EAB. Several times during trial, Mr. Lapes reiterated his belief that the defendants were justified in their conduct of transferring EAB's collateral, including accounts receivables, because of Mr. Lapes's belief that the defendants had the right to collect Supreme's accounts receivables via a variety of newly formed entities, entities admittedly formed for the purpose of putting approximately $600,000 of accounts receivables beyond the reach of EAB's various attachments. The defendants also argue that they had the right to solicit what Mr. Lapes coins "new" business, by rewriting existing business under the names of his newly formed entities.

Documents compiling the underlying loan and security agreements, as well as the credit file, were admitted without objection. From these records, as well as the EAB's audit report, and the testimony of Ms. Terry, it is undisputed that Mr. Lapes provided false financial information to EAB in obtaining the original loan by, *inter alia*, inflating Supreme's accounts receivables and forging premium financing contracts. It is also undisputed that from and after Supreme's default, the defendants failed to maintain records, destroyed other records, and failed to account for assets and the disposition of EAB's collateral. There is voluminous evidence to support EAB's claim that the defendants converted $600,000 of EAB's collateral by depositing Supreme's receivables into the accounts of Mr. Lapes's related entities. EAB traced the transfer of the $600,000 of accounts receivables through various accounts controlled by the defendants and proved that the proceeds were used to pay Mr. Lapes's personal expenses, including a pay off of his residential mortgage.

There is a wealth of documentary evidence admitted: the testimony via deposition, as well as EAB's live witness and the admissions of Mr. Lapes individually and in his representative capacity for the various defendants. Coupled with the defendants' failure to offer any evidence, and Court's conclusion that Mr. Lapes testimony offered via previous depositions was not credible, there is a voluminous record to support independent findings of fact without necessity of relying on the prior findings of the state court. The Court, therefore, rejects EAB's argument that the fact can, and should, be determined by utilizing the doctrine of either collateral estoppel or res judicata. On the uncontroverted evidence presented at trial to the bankruptcy court, there is no legal theory to support the defendants' argument that the creation of "new" entities expressly for the purpose of circumventing existing liens and attachments was anything other than the actual, intentional fraudulent transfer of assets of defendants in an attempt to hinder delay and defraud EAB by putting those assets beyond the reach of EAB.

From these facts, EAB seeks a determination that Mr. Lapes discharge be denied pursuant to 11 U.S.C. §§ 727(a)(3), (a)(4)(A)(D) and (a)(5); that the sum of $554,041.92, the uncollected portion of the original money judgment be declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6); the recovery and turnover of the fraudulently transferred accounts receivables pursuant to 11 U.S.C. § 550 and § 726.105.(1) and § 726.106(1), Florida Statutes, and an accounting of the disposition of all assets transferred by Supreme and Mr. Lapes, to and through Mr. Lapes or any of the defendants, and/or subsequently transferred by any of the defendants. Finally, EAB seeks a deter-

mination that Mr. Lapes's homestead exemption should be denied, an equitable lien imposed in favor of EAB, and a sale ordered. For the reasons set forth, the Court finds in favor of EAB on all counts.

 In Count I, EAB seeks a denial of discharge under 11 U.S.C. § 727(a)(3) [4] on the grounds that Mr. Lapes destroyed records and failed to maintain books and records from which his financial condition could be accurately determined. The term "books and records" is not defined in § 727. "Records need not be kept in any special manner, nor is there any rigid standard of perfection in record-keeping mandated by § 727(a)(3)." (Citation omitted). "On the other hand, courts and creditors should not be required to speculate as to the financial history or condition of the debtor, nor should they be compelled to reconstruct the debtor's affairs." *Matter of Juzwiak*, 89 F.3d 424, 428 (7th Cir. 1996). The discharge in bankruptcy inures to the benefit of the honest debtor who supplies creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Bay State Milling Company v. Martin, (In re Martin)*, 141 B.R. 986, 995 (Bkrtcy.N.D.Ill.1992).

 To prevail, EAB must show that Mr. Lapes failed to maintain books and records or destroyed records from which his financial condition could be ascertained. Once EAB has met that threshold, denial of the discharge is proper unless Mr. Lapes comes forward and justifies his failure to maintain books and records. EAB has met its burden. Mr. Lapes has not offered any evidence that his failure to maintain books and records was justified under all the facts and circumstances of the case. *American Motors Leasing Corp. v. Morando, (In re Morando)*, 116 B.R. 14, 15 (Bankr.D.Mass.1990). EAB is entitled to judgment on Count I pursuant to 11 U.S.C. § 727(a)(3).

 In Count II, EAB seeks a denial of discharge pursuant to 11 U.S.C. § 727(a)(4)(A) & (D) on the grounds that Lapes made a false oath or account and that Lapes "withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents and records and papers relating to the debtor's property or financial affairs." 11 U.S.C. § 727(a)(4)(D). Mr. Lapes signed his Schedules and Statement of Financial Condition under penalty of perjury, yet there is a preponderance of evidence that the schedules do not accurately reflect the location of the all assets of Mr. Lapes. Specifically, the schedules omit all reference to accounts receivables transferred through Supreme to Roco for payment of Mr. Lapes's personal expenses. The Court rejects Mr. Lapes's specious argument that funds derived from "new" business were not subject to disclosure. Because Mr. Lapes failed to account and to maintain and provide adequate books and records, the Court is unable to determine the full extent of his false statements, but the Court is convinced that EAB has prevailed by proving that Mr. Lapes failed to disclose all assets.

 Count III seeks denial of discharge pursuant to 11 U.S.C. § 727(a)(5) on the grounds that "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." In obtaining the original credit, Mr. Lapes claimed

---

4. 11 U.S.C. § 727(a)(3) provides, in relevant part:
(a) The court shall grant the debtor a discharge, unless . . .
(3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case. . . .

ownership of various entities and assets, which assets provided, in part, the basis for EAB's agreement to provide the loan to Supreme and to accept the personal guaranty of Mr. Lapes. Separate and apart from Mr. Lapes's failures to explain the dissipation of Supreme's accounts receivables, Mr. Lapes has offered no evidence to explain the dissipation of his own personal assets. Judgment shall enter in favor of EAB on Count III.

■ Counts IV, V, VI seek a determination that $554,041.92, the uncollected balance of the debt arising from the state court money judgment on the note and Mr. Lapes's personal guaranty is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A),[5] 523(a)(2)(B), 523(a)(4) and 523(a)(6). It is undisputed that Mr. Lapes provided materially false oral and written financial information regarding his own financial condition and the financial condition of Supreme to induce EAB to enter into the original credit transaction. EAB reasonably relied on the false financial information, including false financial statements and forged documents, when it extended credit to Supreme. For these reasons, the balance of the uncollected debt is non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(2)(B) and 523(a)(6). Judgment shall enter in favor of EAB on Counts IV, V, and VII.

■ Count VI seeks relief under 11 U.S.C. § 523(a)(4), which provides that a specific debt will not be discharged if the debt is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The uncontroverted evidence shows that Mr. Lapes, in his capacity as a corporate offi-

cer, breached his fiduciary duty to EAB by, *inter alia,* forging records and transferring accounts receivables. Judgment shall enter for EAB on Count VI.

■ Count VIII, IX and X seek avoidance and recovery of all assets transferred in contravention of Florida's fraudulent transfer statute, § 726.105(1), § 726.106(1).[6] This Court disposes of these counts in a somewhat cursory fashion because the undisputed facts have already been discussed. Equally as important, Mr. Lapes does not dispute any of the allegations in any of these counts except one: Mr. Lapes admits to all facts relative to the transfers of assets to and through his various entities, but he claims such transfers were not intentionally fraudulent because he claims that he believed such transfers of "new" business was justified. The Court has rejected Mr. Lapes's claim that there is any evidence that there was any "new" business. The Court has also rejected Mr. Lapes's argument that any such "new" business was not encumbered by EAB's security interest. There is an overwhelming record that Mr. Lapes intentionally engaged in a prolonged pattern of conduct of making hidden transfers to himself, family members and related entities expressly for the purpose of evading the reach of EAB's security interest and attachments. In his own words, Mr. Lapes claims he had no choice because he had a wife and a new baby that he needed to support. These telling statements, combined with the extensive record, have convinced this Court that Mr. Lapes knew of and fully appreciated the extent and reach of EAB's liens, attachments and injunctions. When convenient, and when he believed it was justified by his goal of supporting his family, Mr.

---

5. 11 U.S.C. § 523(a)(2)(A) provides, in relevant part, as follows:
 "(a) A discharge under section 727 ... does not discharge an individual for any debt:
 For money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a

false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

6. The Trustee rejected the opportunity to prosecute these avoidance claims for the benefit of the estate.

Lapes lied to EAB and continued to intentionally hide and transfer assets even after the entry of state court orders prohibiting such transfers. Judgment shall enter in favor of EAB on Counts VIII, IX and X.

In Count XI, EAB seeks entry of an order that requires the defendants to provide an accounting of all assets transferred to or from the debtor and the defendant companies. There is no justification for the defendants' continued failure to provide that which is required by prior orders of the state court, the Bankruptcy Code, and the Florida fraudulent transfer statute. Judgment shall enter in favor of EAB on Count XI.

In Count XII, EAB seeks a determination that the debtor's homestead exemption [7] should be denied, an equitable lien imposed in favor of EAB, and a sale ordered.

Mr. Lapes's claimed homestead exemption arises from Article X, section 4(a) of the Florida Constitution, which provides, in relevant part:

(a) There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon, except for the payment of taxes and assessment thereon, obligations contracted for the purchase, improvement or repair thereof, or obligations contracted for house, field or other labor performed on the realty, the following property owned by a natural person: (1) a homestead ...

The parties stipulated that the only issue arising from Mr. Lapes's claimed exemption is the following legal question: When, and if, this Court finds that the allegedly exempt property was acquired with funds directly traceable from proceeds of EAB's collateral, i.e., Supreme's accounts receivables, can Mr Lapes use the homestead exemption as a shield to prevent EAB from recovering proceeds of its collateral? This Court has already de-

termined that Mr. Lapes has used evasive maneuvers, created new corporate entities, forged documents, opened a multitude of bank accounts, and converted EAB's collateral, for the express purpose of defeating EAB's security interest in Supreme's accounts receivables. The Court also concludes, on these undisputed facts, that Mr. Lapes's homestead, property located at 1985 South Ocean Boulevard, Apartment 6Q, Hallandale, Broward County, Florida 33309, was acquired by Mr. Lapes with EAB's collateral, funds directly traceable to Supreme's accounts receivable, and that Mr. Lapes acquired the homestead with the proceeds of a series of fraudulent transfers with the actual intent to hinder, delay and defraud EAB.

Mr. Lapes argues that he is entitled to the homestead exemption because there is no fraud exception to the exemption provided by the Florida Constitution. Numerous recent cases discuss the issues arising when a debtor converts non-exempt assets to exempt assets on the eve of bankruptcy and these cases deal with the issue of whether a transfer from non-exempt assets to exempt assets is *per se* a fraudulent transfer. *In re Tabone*, 247 B.R. 541, 543 (Bankr.M.D.Fla.2000) (collecting cases wherein court recognizes "a trend of case law in Florida [that] permits bankruptcy debtors to exempt their homestead even when fraudulently acquired with non-exempt assets. (string cite omitted)" However, the court in *Tabone* also recognized that the Florida Supreme Court, in *Palm Beach Savings & Loan Ass'n v. Fishbein*, 619 So.2d 267, 270 (Fla. 1993), "has engrafted an exception to the homestead provision in the Florida Constitution in order to prevent unjust enrichment." *Id.* The substantive law set forth by the Florida Supreme Court that "[a] homestead cannot be employed as an instrumentality of fraud", *Jones v. Carpenter*, 90 Fla. 407, 106 So. 127 (1925), has

---

**7.** All issues arising from EAB's objection to the debtor's homestead exemption were con-

solidated for trial with this adversary proceeding.

been restated many times. *See, e.g., Hillsborough Inv. Co. v. Wilcox,* 152 Fla. 889, 13 So.2d 448, 450 (1943); *Gepfrich v. Gepfrich,* 582 So.2d 743, 744 (Fla. 4th DCA 1991); *Isaacson v. Isaacson,* 504 So.2d 1309, 1310 (Fla. 1st DCA 1987); *Ryskind v. Robinson,* 302 So.2d 427, 428 (Fla. 4th DCA 1974); *Clutter Const. Corp. v. Clutter,* 173 So.2d 761, 761–62 (Fla. 3d DCA 1965).

Notwithstanding Mr. Lapes claims to the contrary, he did not innocently convert his own non-exempt asset to an exempt homestead on the eve of bankruptcy. Mr. Lapes converted EAB's directly traceable collateral to a homestead in his name. This conduct can be distinguished from those cases where the courts consider whether or not a transfer from non-exempt property to exempt property, standing alone, is a fraudulent transfer that may give rise to the remedy of the imposition of an equitable lien. Mr. Lapes used traceable proceeds from prior fraudulent transfers to acquire a homestead with the actual intent to hinder, delay and defraud EAB. EAB is entitled to avoid all of the transfers leading up to, and including, the use of the proceeds to acquire the homestead, EAB is entitled to an equitable lien in the homestead in the amount of $554,041.92 until such time as EAB can recover and liquidate this property; and EAB is entitled to liquidate the property by conducting a sale of homestead.