**In re Tony Alfonso STEVENSON, Debtor.**

**No. 8:06–bk–00806–CPM.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 30, 2007.

**ORDER SUSTAINING TRUSTEE'S OB-
JECTION TO CLAIM OF EXEMP-
TIONS AND GRANTING MOTION
FOR TURNOVER (Doc. Nos. 83 and
97)**

ALEXANDER PASKAY, Bankruptcy Judge.

THE MATTERS under consideration in this Chapter 7 case, which converted from a Chapter 13 case, arise from two intertwined contested matters, both instituted by the Chapter 7 Trustee ("Trustee") against Tony Alfonso Stevenson ("Debtor"). One is the Trustee's Objection to Debtor's Amended Claim of Exemptions (Doc. No. 83). The other is the Second Amended Motion for Turnover of Assets of the Estate (Doc. No. 97), which involves the same property referenced in the Objection to Claim of Exemptions. In due course, the matters were set for final evidentiary hearing, at which time the Court heard testimony of the Debtor and attorney for the Trustee. Having considered the record, together with the testimonial and documentary evidence admitted which is relevant to the ultimate issues, the Court finds and concludes as follows.

The Debtor commenced this case on March 6, 2006, by the filing of his Chapter 13 Petition. (Doc. No. 1). In his Petition, the Debtor listed his marital status as "single." (Doc. No. 1). The Debtor's original Schedule B listed his interest in a checking account at MacDill Federal Credit Union ("MFCU Checking Account") and a savings account at the same bank ("MFCU Savings Account"), apparently having a combined balance of $4,945.00.[1] (Doc. No. 13). In the Debtor's originally filed Schedule C, he did not claim the monies in the MFCU Accounts as exempt. After the Court denied confirmation of the Debtor's plan, the case was converted to a case under Chapter 7. (Doc. No. 32).

On September 12, 2006, the Trustee filed a Motion for Turnover, which was subsequently amended twice, the Second Amended Motion for Turnover being what the Court considered at trial ("Turnover Motion"). (Doc. No. 97). In April of 2007, the Debtor amended his Schedules B and C, listing the MFCU Checking Account with a balance of $8,836.93 instead of the originally listed amount of $4,945.00, and claiming the new balance as exempt pursu-

---

1. The Court cannot decipher, from the information provided by the Debtor or the Trustee, the balance in the MFCU Savings Account on the date of the filing of the Petition.

ant to Chapter 222.11(3), Florida Statutes. (Doc. Nos. 73, 74).[2] In response, on May 8, 2007, the Trustee filed an Objection to the Debtor's Claim of Exemptions as Amended ("Objection to Exemptions"). (Doc. No. 83). Through discovery requests by the Trustee, it was revealed that the Debtor had another third account, from which the Debtor transferred $10,033.46 into the MCFU Checking Account. Then, on June 6, 2007, the Debtor filed a Motion to Deny Trustee's Second Amended Motion for Turnover of Assets of the Estate ("Debtor's Response"). (Doc. No. 101). Amidst the controversy regarding the Turnover Motion and the Objection to Exemptions, the Debtor's attorney moved to withdraw as counsel. (Doc. No. 89). The Court granted the Debtor's attorney's motion and continued the scheduled final evidentiary hearing on the Turnover Motion and Objection to Exemptions to allow the Debtor time to retain new counsel. The Debtor, however, failed to obtain new counsel, and appeared *pro se* for the trial.

### Trustee's Objection to Exemptions

The Trustee's challenge to the Debtor's claim of exemption is threefold. First, the Trustee contends that the funds claimed as exempt cannot be traced and identified as funds representing earnings of the Debtor. Second, the Trustee claims that in any event the Debtor is not the head of a family as defined in Chapter 222.11 of the Florida Statutes, and therefore, even if the Debtor succeeds in tracing the funds to earnings, the claim of exemption cannot be allowed. The Trustee points out that the Debtor failed to disclose the correct balance in the MFCU Checking Account until the Trustee discovered the correct balance. The Trustee alleges that only then did the Debtor amend his Schedule C, and for this reason he cannot benefit from the belated

disclosure. Third, at the conclusion of the presentation of the evidence, the Trustee also urged that, by virtue of the applicable law, the exempt status of the earnings is preserved only for six months, and only funds which can be traced to the Debtor's earnings for the preceding six months can be claimed as exempt.

### Trustee's Turnover Motion

In the Turnover Motion, the Trustee alleges the facts contained in the Objection to Exemptions and requests turnover of the funds from the Debtor's MFCU Checking and Savings Accounts. As a preliminary matter, the Trustee seeks turnover of the $1,388.43 held in the Debtor's MFCU Savings Account, the balance of which was never disclosed on the Debtor's schedules or specifically exempted. Furthermore, the Trustee states that based on a review of the Debtor's MFCU Checking Account statements, deposits aggregating to $15,967.99 within the six months prior to the petition date are non-exemptible and, therefore, subject to administration by the bankruptcy estate. However, on the date of filing only $8,863.00 remained in the MFCU Checking Account, and $1,388.43 remained in the MFCU Savings Account. The Trustee requests turnover of the balances in the MFCU Checking and Savings accounts at the time the Debtor amended his Schedules B and C. Without turnover of these funds, the Trustee asserts an inability to complete administration of the assets of the estate.

### Debtor's Response to Trustee's Turnover Motion

The Debtor's Response to the Trustee's Turnover Motion is based on four propositions. First, the Debtor contends that his sole source of income was from his employ-

---

**2.** The Debtor never disclosed or claimed as exempt the balance of the MFCU Savings Account, which discovery by the Trustee determined to equal $1,388.43.

er. Second, the Debtor avers that during the last five years the Debtor filed his federal income tax as head of family, and the Trustee's claim to the contrary is frivolous and lacks merit. The Debtor explains the reason for non-disclosure of the third account is that the $10,033.46 discovered by the Trustee was transferred into the MFCU Checking Account on December 6, 2006, at which time the Debtor closed the third account, leaving no open account to report. Third, the Debtor asserts that the funds transferred from the third account into the MFCU Checking Account and the funds which were already in the MFCU Checking Account are all traceable to earnings, and therefore exempt pursuant to Chapters 222.11, 222.22, and 222.25, Florida Statutes. The Debtor's fourth argument is that $6,000.00 of unsecured debts attributable to the Debtor on the date of petition was corporate debt for which the Debtor should not be held liable.

It is without dispute that the Court has subject matter jurisdiction over the matter at hand. This Court has jurisdiction over this case pursuant to 28 U.S.C. sections 1334 and 157. This is a core matter pursuant to 28 U.S.C. section 157(b)(2)(B) and (E).

The papers filed and evidence presented at the trial make it clear that the threshold issue which must be resolved is the Debtor's status as head of family pursuant to Chapter 222.11, Florida Statutes. Should the Court find that the Debtor satisfies the requirement of being "head of family," the secondary issue for determination is whether the funds can be traced to earnings attributable to the preceding six-month period before the commencement of the case.

The Court's undertaking in this case is compounded by the fact that the Debtor appeared at trial without the assistance of counsel. The Court recognizes, and gives deference to, the position espoused time and time again by the Eleventh Circuit, that *pro se* litigants are to be treated with special care because they "occupy a position significantly different from that of litigants represented by counsel." *Johnson v. Pullman*, 845 F.2d 911 (11th Cir.1988). In this vein, it should be noted, however, that the Debtor was represented by counsel who filed the original Petition for the Chapter 13 case and remained in the case for a significant time. The Debtor's attorney did not withdraw until after the initial motion for turnover was filed and the Debtor's Schedules B and C were amended.

Before considering the respective positions of the parties in support of and in opposition to the claim of exemptions and turnover, the Court is mindful of the general proposition that laws governing exemptions in Florida are designed to assist debtors to retain properties which are deemed necessary for the debtor's support and support of the debtor's dependents, and generally shall be liberally construed and broadly interpreted in favor of the claim of exemption, and strictly against the objecting party's claim. *Tramel v. Stewart*, 697 So.2d 821 (Fla.1997); *Graham v. Azar*, 204 So.2d 193 (Fla.1967). However, debtors who come to the bankruptcy court seeking relief must do so with clean hands, to honestly and truthfully disclose all assets and liabilities and all other relevant information required by the Statement of Financial Affairs. *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002) (citations omitted). "A debtor who comes to the bankruptcy court must come clean, make full disclosure of all information relevant to the administration, and must fully cooperate with the trustee." *In re Gardner*, 344 B.R. 663, 667 (Bankr. M.D.Fla.2006) (*citing Kentile Floors, Inc. v. Winham*, 440 F.2d 1128 (9th Cir.1971)).

The instant case presents a paradigm of a haphazard and careless preparation of a case by a Debtor who was represented by counsel at the time of filing. The documents initially filed by the Debtor were replete with material omissions and misstatements, which the Debtor endeavored to correct only after the Trustee commenced an action for turnover of monies which the Debtor failed to disclose. For this reason, the Court is constrained to take statements by the Debtor with a proverbial grain of salt, and concludes that the Debtor lacks the power of persuasion to support his claims in the Court's eyes.

With this in mind, the Court turns to the threshold issue to be resolved, the Debtor's status as head of family under Chapter 222.11, Florida Statutes. Chapter 222.11 of the Florida Statutes provides exemption of wages from garnishment under certain circumstances for earnings of "head of family." Fla. Stat. Ann. § 222.11 (2007). The statute defines the term "head of family" as "any natural person who is providing more than one-half of the support for a child or other dependent." Fla. Stat. Ann. § 222.11(1)(c) (2007). "As used in this section, the term 'head of family' includes any unmarried, divorced, legally separated, or widowed person who is providing more than one-half of the support for a child or other dependent. This exemption shall apply to any wages deposited in any bank account maintained by the debtor when said funds can be traced and properly identified as wages." In re Wheat, 149 B.R. 1003, 1008 (Bankr.S.D.Fla.1992); Fla. Stat. Ann. § 222.11 (2007). Essential to this analysis is a showing that the Debtor has a dependent and provides more than one-half of the monetary amount of support required for such dependent. As with all claims of exemption, the Debtor has the burden of proving his entitlement to this exemption. See In re Parker, 147 B.R. 810, 812 (Bankr.M.D.Fla.1992). Whether an individual is a head of family is a factual question to be resolved based on the totality of the circumstances. In re Beckmann, 2000 WL 33722204 (Bankr.M.D.Fla. June 30, 2000) (citing Holden v. Estate of Gardner, 420 So.2d 1082, 1083 (Fla.1982)).

It is without dispute that in his original Chapter 13 Schedule I the Debtor stated his marital status as "single," and did not list any dependents. However, in the Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income ("Form B22C"), the Debtor stated that he was married but listed $0.00 in the "Spouse's Income" column. When confronted with his characterization as single at trial, he indicated that he is married, although qualified that he is now divorced or divorcing. Be that as it may, the Debtor failed to furnish any documentation that would reveal his current marital status or his pending divorce, if one exists.

When questioned concerning dependent persons whom he is supporting, the Debtor stated he has not supported his wife, or ex-wife as the case may be, since the year 2000 when they separated. The Debtor did state that he has a ten-year-old child for whom, according to his income tax return, he pays $400.00 monthly in support. The record, however, is devoid of evidence to substantiate the claim that he pays this money, and the Debtor was unsure if he pays the money as a result of an amicable understanding between him and the child's mother, or pursuant to an order of a court. The only scintilla of evidence the Court finds is on Line 33 of the Form B22C, the Debtor lists $400.00 in the column requesting disclosure of court-ordered payments, without reference to whether this is spousal or child support. However, the Debtor offered no documentation to support this fact, nor did the Debtor claim it on his original Schedule E

as domestic support obligations. He failed to furnish the Court with any information relating to the purpose for which this $400.00 is used, whether he pays this money to the child's mother or pays the child's expenses directly or even whether this amount is in fact regularly paid for the child's support. The Debtor was apparently without knowledge of whether he had legal or physical custody of the allegedly dependent child. From this record it is impossible, absent a breakdown of the payments made, to determine whether or not the amount paid is more than half of the amount required to support the child, and in turn to qualify under the statute for the wages exemption.

The Court can only describe the Debtor's testimony at trial as unresponsive at best. The Debtor's explanation for the repeated omission and misstatements of material facts lack sufficient persuasiveness to carry the ultimate burden of persuasion required to overcome the evidence in support of the Objection to Exemptions.

In sum, this Court is constrained to conclude that this record does not support the Debtor's claim as head of family and, therefore, the funds on balance in the MFCU Checking Account on the date of the commencement of the case, equaling $8,836.93, cannot be claimed exempt, and the Trustee's Objection to Exemptions is properly sustained. In light of the Court's holding that the MFCU Checking Account is not exempt, it is appropriate to apply the ruling to the Trustee's Turnover Motion. Consequently, the $8,836.93 is property of the estate and must be turned over to the Trustee. Insomuch as the Debtor never reported the existence of the MFCU Savings Account, and never claimed any interest in the account as exempt, the balance at the commencement of the case of $1,388.43 is also property of the estate and subject to turnover to the Trustee as well.

In light of the foregoing it is unnecessary to consider the ultimate claim of the Trustee concerning the tracing of the funds. The issue of whether amounts earned attributable to earnings in the preceding six-month period could be claimed as exempt is likewise an unnecessary determination.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Trustee's Objection to the Debtor's Claim of Exemption is SUSTAINED, and the Debtor's Claim of Exemption is DISALLOWED. It is further

ORDERED, ADJUDGED AND DECREED that the Trustee's Second Amended Motion for Turnover of Assets of the Estate is GRANTED, and the Debtor's Motion to Deny Trustee's Second Amended Motion for Turnover of Assets of the Estate is DENIED. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor turnover the sums of $8,836.93, and $1,388.43 to the Trustee within fifteen (15) days of the entry of this order.

DONE AND ORDERED.